AF Approval *AMG*                                          Chief Approval _____

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 6:14-cr-33-Orl-28KRS

JONATHAN TYLER PRIVE

**PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A.

Lee Bentley, III, United States Attorney for the Middle District of Florida, and the

defendant, JONATHAN TYLER PRIVE, and the attorney for the defendant, Jose

Rodriguez, mutually agree as follows:

**A.      Particularized Terms**

1.      Count Pleading To

The defendant shall enter a plea of guilty to Count Two of the

Indictment.  Count Two charges the defendant with attempted enticement of a

minor, in violation of 18 U.S.C. § 2422(b).

2.      Minimum and Maximum Penalties

Count Two is punishable by a mandatory minimum term of

imprisonment of 10 years up to life, a fine of up to $250,000, a term of supervised

release of at least 5 years up to life, and a special assessment of $100 per felony

count.  With respect to certain offenses, the Court shall order the defendant to

make restitution to any victim of the offenses, and with respect to other offenses,

Defendant's Initials _____



the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

      3.   <u>Elements of the Offense</u>

      The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count Two are:

<u>First:</u>     the Defendant knowingly attempted to persuade, induce, entice or coerce an individual to engage in sexual activity;

<u>Second:</u>   the Defendant used the Internet or cellphone to do so;

<u>Third:</u>    when the Defendant did these acts, the victim was less than 18 years old; and,

<u>Fourth:</u>   one or more of the individuals engaging in the sexual activity could have been charged with a criminal offense under the law of Florida.

      4.   <u>Count Dismissed</u>

      At the time of sentencing, the remaining count against the defendant, Count One, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

      5.   <u>No Further Charges</u>

      If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

Defendant's Initials        2



6.   <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. §§ 2248 and 2259, defendant agrees to make full restitution to the minor victim.

7.   <u>Mandatory Restitution to Victims of Offense of Conviction</u>

Pursuant to 18 U.S.C. § 2259, defendant agrees to make restitution to known victims of the offense for the full amount of the victims' losses as determined by the Court.  Further, pursuant to 18 U.S.C. § 3364(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing.

8.   <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

9.   <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted,

Defendant's Initials                 3

the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.4., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 2428, whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the following: an Acer Aspire

Defendant's Initials                     4



laptop computer, serial number LUS050B13384523F592535, which was used to facilitate the criminal activity charged in the indictment.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also hereby agrees to waive all constitutional, statutory and procedural challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to the provisions of Rule 32.2(b)(1)(A), the United States and the defendant request that promptly after accepting this Plea Agreement, the Court make a determination that the government has established the requisite nexus between the property subject to forfeiture and the offense(s) to which defendant is pleading guilty and enter a preliminary order of forfeiture. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is

Defendant's Initials                 5



omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of his cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed

Defendant's Initials                     6

beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above.  The Court shall retain jurisdiction to settle any disputes arising from application of this clause.  The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

4.    Abandonment of Property - Computer Equipment

The United States of America and defendant hereby agree that any computer equipment as defined in 18 U.S.C. § 2256, seized from the defendant and currently in the custody and/or control of the Brevard County Sheriff's Office and Homeland Security Investigations or other appropriate agency, were properly seized and are subject to forfeiture to the government according to 18 U.S.C. §§

Defendant's Initials                  7

2253 or 2254, and/or that the computer equipment and peripherals constitute evidence, contraband, or fruits of the crime for which he has pled guilty. As such, defendant hereby relinquishes all claim, title and interest he has in the computer equipment and peripherals to the United States of America with the understanding and consent that the Court, upon approval of this agreement, hereby directs the Federal Bureau of Investigation, or other appropriate agency, to cause the computer equipment described above to be destroyed forthwith without further obligation or duty whatsoever owing to defendant or any other person.

As part of the plea agreement in this case, defendant hereby states under penalty of perjury that he/she is the sole and rightful owner of the property, and that defendant hereby voluntarily abandons all right and claim to and consents to the destruction of: an Acer Aspire laptop computer, serial number LUS050B13384523F592535.

5.    Sex Offender Registration and Notification

The defendant has been advised and understands, that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places

Defendant's Initials                     8

at which the defendant is or will be an employee or a student. The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status. The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

6.  Removal - Notification

The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, the offense to which defendant is pleading guilty may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that may result from the defendant's guilty plea, even if the consequence is the defendant's automatic removal from the United States following completion of the defendant's sentence.

Defendant's Initials _____                    9



**B.** **Standard Terms and Conditions**

    1.    <u>Restitution, Special Assessment and Fine</u>

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied. On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  The special assessment is due on the date of sentencing.  The defendant understands that this agreement imposes no limitation as to fine.

    2.    <u>Supervised Release</u>

        The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon

Defendant's Initials          10



release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

    3.    <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

    4.    <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

    5.    <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit

Defendant's Initials         11

reflecting the defendant's financial condition.  The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party.  The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report

Defendant's Initials                     12

prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

      7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

      The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence

Defendant's Initials        13



violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is

Defendant's Initials                  14



pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth

Defendant's Initials                     15

in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

    12.    Entire Agreement

        This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

    13.    Certification

        The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

        DATED this _____ day of July, 2014.

                                        A. LEE BENTLEY, III
                                        United States Attorney


_____            _____
JONATHAN TYLER PRIVE               Andrew C. Searle
Defendant                          Assistant United States Attorney


_____            _____
Jose Rodriguez                     Carlos A. Perez-Irizarry
Attorney for Defendant             Assistant United States Attorney
                                   Chief, Orlando Division


Defendant's Initials _____                    16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                CASE NO. 6:14-cr-33-Orl-28KRS

JONATHAN TYLER PRIVE

FACTUAL BASIS[1]

Beginning on or about November 4, 2013, and continuing through and
including on or about November 5, 2013, in Brevard County, Florida, in the
Middle District of Florida, and elsewhere, the defendant, JONATHAN TYLER
PRIVE ("PRIVE"), used the internet, a facility and means of interstate commerce,
in an attempt to persuade, induce, entice, and coerce a three year old female
child ("the minor victim") to engage in sexual activity for which any person could
be charged with a criminal offense under the laws of the State of Florida, that is,
Lewd or Lascivious Battery, a violation of Florida State Stat. § 800.04.   The
minor victim is the daughter of another individual ("the other individual").  On a
prior occasion in September of 2013, PRIVE and the other individual participated
in the sexual abuse of the minor victim at the other individual's home in Brevard
County.[2]   The actions of PRIVE and the other individual came to light as a result
of a joint investigation conducted by the Brevard County Sheriff's Office ("BCSO")

---

[1] The factual basis is prepared by the United States and does not include all of the facts relevant
to the defendant's involvement in the crime to which the defendant is pleading guilty and other
illegal activities in which the defendant may have been involved.

[2] The other individual is currently charged with federal offenses under Middle District of Florida
Case No. 6:14-cr-34-ORL-28DAB.

Defendant's Initials ⟋⟋⟋                    17

and the Cocoa Beach office of the Department of Homeland Security ("DHS"),
Homeland Security Investigations ("HSI"), which is set forth, in part and
substance, below.

In September and October of 2013, an HSI Task Force Agent acting in an
undercover capacity ("the UC agent") conducted an investigation into the other
individual which revealed that the other individual was sexually abusing the minor
victim, producing child pornography images of the minor victim, and distributing
some of these child pornography images to others, via the internet. Agents
eventually identified the other individual's residence in Brevard County where
they ultimately arrested the other individual and executed a search warrant.
Agents also forensically examined the electronic devices seized from the other
individual's residence and gained access to his email accounts with his
permission. A review of the other individual's electronic devices and email
accounts revealed communication between the other individual and PRIVE,
using their respective email accounts, regarding their prior sexual abuse of the
minor victim as well as their plans to continue sexually abusing the minor victim
at a date in the future. Some of these emails are described, in substance and
part, below[3]:

On September 9, 2013, PRIVE asked the other individual: "can I see a pic
of your little one?" The other individual responded by sending PRIVE a
photograph of the minor victim with clothing on a child's bike and stated: "Ya a G

---

[3] The portions of the factual basis that are in quotation marks are direct quotes from these emails.
Any spelling or grammatical errors in quotation marks were contained in the emails themselves.

Defendant's Initials                     18

rated on lol! Tell me what u would do in your fantasy. Thereafter, PRIVE sent the

other individual the following email:

PRIVE: "In my fantasy I'd sit on the couch with a girl on my lap and slide my fingers into her little panties and finger her clit while we watched cartoons. Then I'd undress her once she was wet and wiggling her hips and sit with my cock between her thighs and rub it up and down her little cunt while she held the tip. Then when the cartoon was done I'd take her to the bedroom to play. I'd have her lick and suck on the tip while she laid on my chest and I played with her tight little butt. I'd use a whole bunch of lube and play with her ass until she was loose enough to slip my pinky inside. Then I'd finger her while she held my cock and played with it. Want to hear more? Tell me what new stuff you've with her in your fantasies and I'll go on."

On September 10, 2013, the email exchange continued as follows:

The other individual: "Would luv to watch that. Tried using my pinky to finger her and tried a vibrating toothbrush."

PRIVE: "How did it work? How far did you get with it?

After fingering her for long enough to get her nice and loose. I'd add another finger and keep going while she laid on my stomach, panting, and squirming. Then when she couldn't take it anymore, I'd lay her on her back and slide the head of my cock up and down her little cunt, getting it all wet and slippery with pre cum. I'd push the head tight against her little cunt and shoot it inside her, filling her up."

The other individual: "I am so hard after that! Wow!"

PRIVE: "Glad you liked it. lol"

PRIVE: "you thinking of taking another shot at a getting together?"

Defendant's Initials _____   19

| | |
|---|---|
| The other individual: | "Yes I am. I would really like to chat live about our fantasies. Wife at work and kids r at grandmas so they will not be here to bother us or keep us from our fantasies. If u do cum over you wont be sorry!" |
| PRIVE: | "I wont be sorry? What did you have in mind?" |
| The other individual: | "Was thinking we could fantasize and maybe jo while we talk about what we like? Maybe trade good porn you know. You would not be sorry if u cum over!" |
| The other individual: | "U would have fun 4 sure!" |
| PRIVE: | "how long are your wife and the kids gone?" |
| The other individual: | "Must be soon though cuz she wont be working very late tonight.  We r waiting 4 your response." |
| PRIVE: | "you just said "we" are waiting. Who is "we"?" |
| The other individual: | "Till about 8ish so if u came now + drive time we could have about a solid hour to play at least." |
| The other individual: | "Royal we. Remember neither of us want to do anything in our fantasies for real right? So we will fantasize another being here but no real contact. But if u cum over u wont be sorry!" |

After this PRIVE sent the other individual numerous emails requesting the

other individual's address and the other individual eventually sent PRIVE his

address which was in Brevard County.  PRIVE and the other individual then

exchanged emails agreeing to meet and provided each other with names.

PRIVE referred to himself as "John," and the other individual referred to himself



as "Mitch."

On September 10, 2013, at 6:24 p.m., PRIVE sent the other individual an email stating: "Okay mitch. I'm on my way."     There were no further emails between them until 8:04 p.m., when the following email exchange took place

The other individual:      "Hey John email me when u get home!"

PRIVE:                          "home now."

The other individual:      "Man! That was so fucking hot watching u with my daughter!  Did u enjoy?"

PRIVE:                          "Hell yeah. I wish that we had more time though. (and more lube too. Lol) Then we could have tried some other things."

The other individual:      "I wish we had more time too. Fri night maybe? So what do u wanna do to her with lube?"

The other individual:      "Dude my dick is gonna be hard for a month after seeing that!  Especially when you came all over my baby daughter fuck yeah! Use her!"

PRIVE:                          "I'd want to try doing what I told you about in my story And I think we'd need to put down a towel or something for the grand finale. You saw how much I cum. lol"

The other individual:      "I love how much u cum! She may resist and cry so u may have to be ok with that but I would luv to help u fuck her!"

PRIVE:                          "We'd be gentle of course, but yeah, it would be okay. And you may want to think about your boy some more. He seemed pretty smart, and putting him in his room every time will make him mad and ask questions or talk about how you're being mean and sending him to his room all the time. lol"

From September 11, 2013 through October 11, 2013 (the date agents

Defendant's Initials _____            21

arrested the other individual), PRIVE continued to discuss with the other individual the following topics in emails: (1) PRIVE's sexual abuse of the minor victim from the date described above; (2) plans to meet at the other individual's home when the other individual's wife was away; and (3) in graphic and disturbing detail their plans to engage in sexual activity with the minor victim in the their future meetings, including plans to penetrate the minor victim's vagina and anus.

On October 11, 2013, before the agents arrested the other individual, the other individual asked PRIVE to come over but PRIVE was unable to during the time-frame when the other individual's wife was away from the home.  The last emails between PRIVE and the other individual before the other individual was arrested are as follows:

> PRIVE:               "That really sucks. I cant get there by then and still have enough time to help you finger her and fill her with cum. Think maybe I could have a couple naughty pics of her little holes spread open for me?"
>
> The other individual:  "Wife came home and spoiled my fun :( After that    close call situation I don't send pics of her anymore."

After agents arrested the other individual and discovered the above-mentioned emails between PRIVE and the other individual, the UC agent, posing as the other individual, used the other individual's email account to initiate online communication with PRIVE.  On November 4, 2013, the following email exchange took place:

Defendant's Initials _JW_                22

| UC[4]: | "hey it's playtime, you interested again?" |
| PRIVE: | "Hey. Just got your message. What did you have in mind?" |
| PRIVE: | "Have you done anything new since last time?" |
| UC: | "not since you came over, that was hot. wife is in school tomorrow." |
| PRIVE: | "oh yeah? What time does she leave and what do you want to do this time?" |
| UC: | "Cool she leaves at about 9, up to you that was so hot i couldn't stop thinking about last time. the baby girl will be here too." |
| PRIVE: | "Is that 9 in the morning or at night?" |
| UC: | "in the morning." |
| PRIVE: | "I'd love to pop her cherry and put fingers in both her holes before filling her little cunt with cum :)" |
| UC: | "that be so hot see that happen to my 3yo baby girl. wife won't be home till like five, mmmmm." |
| PRIVE: | "Lots of time to play ;) What's your address again? I cant find the message that had it in there." |
| UC: | "you have to let me know when your coming wife will kill me if she is here." |
| PRIVE: | "I'd like to come at about 10:30 or 11, that way we have plenty of time to play with your daughter and fill her holes up with fingers and cum ;)" |
| UC: | "so hot im in [at this point in the email exchange, the UC agent provided PRIVE with the street and city in |

---

[4] Where the UC agent is referenced in these email exchanges with PRIVE, the UC was communicating with PRIVE using one of the other individual's email accounts and pretending to be the other individual.

Defendant's Initials _~~JP~~_                    23

|  | Brevard County where the other individual lived], can you hit me up in the morning so i'll know your cumming like before." |
|---|---|
| PRIVE: | "Sounds good :) I'm looking forward to seeing how far we can stretch her out and how much cum we can put in her ;) |
| UC: | "mmmmm hot, hit me up in the morning and i'll let you know the wife is gone she should be home soon." |
| PRIVE: | "okay :)" |
| UC: | "talk to you then." |

On November 5, 2013, at approximately 9:16 a.m., the UC sent PRIVE an email stating: "hey she just left, if you haven't changed her mind." At 9:26 a.m., the UC corrected the prior email, sending one that stated: "your." At approximately 9:55 a.m., an HSI agent conducting surveillance at PRIVE's residence in Brevard County observed PRIVE exit his residence and walk to a nearby McDonalds while carrying a small netbook computer and a cell phone. PRIVE sat at a table outside the McDonalds, opened up the computer, and started typing. While HSI agents conducted surveillance of PRIVE typing on his computer at the McDonalds, the UC agent had the following email exchange with him:

|  |  |
|---|---|
| PRIVE: | "Yeah I'm still interested in coming over. What's the address? And are you sure she wont be coming back for lunch or anything?" |
| UC: | "no she brought her lunch great what time you going to be here." |
| PRIVE: | "I can be there in about 45 minutes if you give the address again. And do I need to bring some lube, or |

Defendant's Initials _____   24

|        | do you have some?"                                                                                                                                                                       |
|--------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| UC:    | "for the baby girl yeah i'm about out. [at this point in the email exchange, the UC agent provided PRIVE with the other individual's exact address in Brevard County]                      |
| PRIVE: | "okay. I'll be there at about 11:20."                                                                                                                                                     |
| UC:    | "ok bro i'll put her in the tub."                                                                                                                                                         |

After these emails, an HSI agent observed PRIVE close his computer and return to his home with his computer and cell phone at 10:30 a.m. At approximately 10:41 a.m., PRIVE exited his residence, got on his motorcycle, and drove away. HSI agents in vehicles and the BCSO Air Unit followed PRIVE as he drove to the street in Brevard County where the other individual's residence was located. At approximately 11:30 a.m., BCSO Agents stopped PRIVE on his motorcycle and later recovered from the saddle bag of the motorcycle a packet of lubricant.

After PRIVE was stopped, the UC agent approached PRIVE and identified himself as a law enforcement officer. The UC agent advised PRIVE of his Miranda rights and PRIVE agreed to waive his rights and speak to law enforcement. PRIVE also signed a Miranda rights waiver form. After PRIVE agreed to speak, he was interviewed by agents. At the outset of the interview, PRIVE admitted that he was the user of the email account that was in communication with the other individual's email account regarding the sexual abuse of the minor victim as set forth above. PRIVE eventually admitted to the following in his interview with agents:

Defendant's Initials                     25

- PRIVE met the other individual online after the other individual responded to an online Craigslist advertisement PRIVE posted regarding bondage and sadomasochistic ("BDSM") sexual interests.

- PRIVE and the other individual exchanged emails regarding BDSM.

- PRIVE went to the other individual's home one time to continue their conversations about BDSM.

- The other individual's son and daughter (the minor victim) were at the residence when PRIVE came over.

- PRIVE and the other individual entered the other individual's bedroom with the minor victim while the other individual's son remained in the living room.

- Once inside the bedroom, the other individual lifted the child's dress, rubbed the child between her legs, and "spread her open."

- Both PRIVE and the other individual removed their penises.

- PRIVE rubbed his penis against the minor victim's vagina.

- PRIVE also placed his penis into the child's mouth and touched the child's vagina with his hand.

- PRIVE ejaculated on the minor victim's stomach and the other individual licked the semen off the victim.

- At some point, the other individual rubbed his penis in the child's vagina.

- After this, the other individual dressed the child in a white dress.

- Regarding his intentions in travelling to the other individual's residence in Brevard County on November 5, 2013, PRIVE admitted that he planned to participate in the sexual abuse of the minor victim a second time.

- He used his netbook computer to communicate with the other individual and that the computer was at his residence (later identified to be an Acer Aspire laptop computer, serial number LUS050B13384523F592535).

Defendant's Initials           26

After PRIVE made these and other statements to law enforcement, he was arrested and agents executed a search warrant at his residence where they seized several electronic devices, including a Kindle device labeled "Jon's Kindle." A forensic examination of the Kindle device revealed that the following material was contained on the device:

- Portions of the emails sent back and forth between PRIVE and the other individual's email account, including some of the emails on November 4, 2013 when the UC was posing as the other individual.

- Evidence that the computer had been used to connect to the wireless service at the McDonalds where agents observed PRIVE communicating with the UC.

- Recent search terms consistent with an interest in child pornography: "pthc 4yo 5yo 6yo 7yo 8yo 9yo" while the user of the computer visited the website "fileshut.com."

- Google map searches for the other individual's address in Brevard County.

- Five videos of child pornography that had been deleted and were located in the unallocated space on the computer.

Pursuant to a search warrant, agents also acquired email content records from the service provider for the email account PRIVE used in the above-described communications with the other individual and the UC. The email content records from the service provider included above-described emails between PRIVE and the other individual's email address.

Defendant's Initials  27