## Defendant's Motion to Terminate Proceedings and Vacate Sentence

(*underlines are italicized*)

Defendant, Jonathan Price, does hereby submit a motion before the court to terminate the proceedings against him and vacate his conviction pursuant to *Rule 12(b)(3)(B) Fed.R.Crim.P.*

Defendant claims that *18 U.S.C. §2422(b)* is *unconstitutionally vague*, thereby denying due process under the *Fifth Amendment*. Specifically, Defendant claims that the jurisdictional element "... any facility or means of interstate or foreign commerce," fails to "'give a person of ordinary intelligence fair notice'" of the objects, articles, systems, etc., which it prohibits the use of in the commission of the offense. Thus, *§2422(b)* does not provide a reasonable opportunity to understand the conduct it prohibits, and leaves individuals to guess at what the term encompasses.

Being in violation of the Due Process Clause of the *Fifth Amendment* and thus "null and void", having no effect, *§2422(b)* cannot serve as an offense against the United States, and fails to invoke the court's jurisdiction under *18 U.S.C. § 3231*. See *Marbury v. Madison, 1 Cranch 137, 2 L.Ed 60 (1803)* (Stating that any law repugnant to the constitution is null and void, having no effect.).

Furthermore, as the Supreme Court has held that, in a proper case, an individual may "assert injury from governmental action taken in excess of the authority that federalism defines." *Bond v. United States, 564 U.S. ___, ___, 131 S.Ct. 2355, 2363-2364, 180 L.Ed.2d 269 (2011),* and as the court obtained a plea of guilty pursuant to an unconstitutional exercise of the court's power, *Marbury, supra* (holding that "an Act of Congress will not be enforced by the courts if what it prescribes violates the Constitution of the United States."), Defendant asserts that all records pertaining to his plea of guilty or his subsequent conviction should be sealed, and barred from use in any further legal actions which may be pending, or brought in the future, as such material falls under the 'Fruit of the poisonous tree' rule, and is remedy for "governmental action taken in excess of the authority federalism defines." *Bond, supra.* Such action should be taken along with vacating the conviction.

Additionally, Defendant asserts that, as in United States v. Peter, 310 F.3d 709 (11th Cir. 2002), Defendant plead guilty to conduct that did not constitute a federal criminal offense. Because the conduct alleged in this case was outside the sweep of the charging statute", id., at 714, jurisdiction was never properly established. See Peter, supra, at 713-714 (explaining that Cotton did not upset the rule of Meacham that an indictment's failure to describe conduct proscribed by a federal statute is a jurisdictional defect).

Defendant claims that, even if § 2422(b) were to remain constitutional after being subjected to the test for vagueness, the statute could reach only those activities which "standing alone, have a substantial effect on interstate commerce", in accordance with United States v. Morrison, 529 U.S. 598, 617 (2000); see also United States v. Lopez, 514 U.S. 549, at 561 (1995).

Defendant asserts that the 11th Circuit has repeatedly recognized that §2422(b) was specifically intended to criminalize "the persuasion, inducement, enticement, or coercion of the minor", United States v. Maxwell, 368 F.3d 1283 (2004), and is not intended to regulate the specific circumstances in which the offense occurs, thereby foreclosing the possibility that Congress intended to exercise its power to regulate instrumentalities or channels of interstate commerce. This necessitates the application of the "substantial effect" test pursuant to the Supreme Court's rulings in Lopez and Morrison, as the conduct specifically addressed by §2422(b) is an activity which is purely intrastate in nature, and because of this Court's recognition that "in view of Lopez and Morrison, the "mere engagement in commercial activities may not necessarily provide the nexus between the function of the [object] and interstate commerce." Id., at 1295." United States v. Ballinger, (2002).

Defendant asserts that, upon applying the "substantial effect" test and examining the facts of this case, his alleged conduct could not be found to have a substantial effect on interstate commerce, especially when no aggregation of

local effects is constitutionally permitted in order to elevate a non-economic activity's insubstantial effect on interstate commerce into a substantial one in order to support federal jurisdiction. See Lopez, supra, at 561. Therefore, the court erred in accepting a plea of guilty and entering a judgment of guilty, and such a conviction must be vacated, pursuant to this motion under Rule 12(b)(3)(B) Fed. R. Crim. P.

## ANALYSIS:

In the case of United States v. Wayerski, 624 F.3d 1342, at 1347 (11th Cir. 2010), the court held that "'[V]agueness' is an outgrowth of the Fifth Amendment's Due Process Clause. United States v. Williams, 553 U.S. 285, 304, 128 S.Ct. 1830, 1845, 170 L.Ed.2d 650 (2008). It encompasses notions of fair warning, such that people of common intellect may understand a statute's prohibitions and need not guess at its meaning. United States v. Hunt, 526 F.3d 739, 743 (11th cir, 2008). A criminal statute will violate due process if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732, 120 S.Ct. 2480, 2498, 147 L.Ed.2d 597 (2000)."

Justice Scalia, concurring in Beard v United States, 134 S.Ct. 2077, 2097, 189 L.Ed.2d 1 (2014) said: "A criminal statute must clearly define the conduct it proscribes. If it does not "give a person of ordinary intelligence fair notice" of its scope, United States v. Batchelder, 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), it denies due process."

Referring again to Wayerski, supra, "[T]he first step in a vagueness inquiry is to examine the plain language of the statute. United States v. Ducan, 596 F.3d 1283 (11th cir. 2010), "The touchstone of the inquiry is the meaning of the statute in light of common understanding and practice." United States v. Hunt, 626 F.3d

739, 743 (11th Cir. 2008). When the plain text of the statute sets forth clearly perceived boundaries, our inquiry is ended. Duran, supra, at 1291."

Statute 18 U.S.C. § 2422(b) states:

"Whoever, using the mail, or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned for not less than 10 years, or for life."

Our first step will be to examine the plain language of the statute, which says in the relevant part "...any facility or means of interstate or foreign commerce." As held in Hunt, 526 F.3d at 743 (11th Cir. 2008), we must look at the plain language "in light of common understanding and practice." Thus, a person of "common intellect" would use the word "facility" to describe a physical locations, such as buildings, complexes, and the surrounding areas or amenities. No speaker in natural parlance would describe the internet as a facility. The common understanding is that the word "facility" only applies to physical locations, and no person would apply the term to any abstract and decidedly non-physical subject like the internet.

Stating that a person used "[a] facility... of interstate or foreign commerce" conveys the idea that the person made use of a physical location where interstate commerce happens, such as a retail store, or a shipping and receiving facility like a warehouse, or even a truck stop.

This is a very different idea than that conveyed by saying that someone used "the internet." This is especially true when we consider that the vast majority of ordinary individuals who use the internet do so for non-economic

purposes, and are completely unaware that their data is being routed to another state, even when they are communicating across town.

Supporting this position, we can look to *Bond v. United States*, 134 S.Ct. 2077, at 2091, where the court held that "[I]n settling on a fair reading of a statute, it is not unusual to consider the ordinary meaning of a defined term, particularly when there is dissonance between that ordinary meaning and the reach of the definition." While there is no definition for the term "any facility of interstate commerce" provided in §2422(b) there is clearly a "dissonance between [the] ordinary meaning and the reach of the definition."

As we can see, using the touchstone of "common understanding and practice" established by this circuit by *Hunt, supra*, the term "any facility... of interstate or foreign commerce," fails to provide "people of ordinary intelligence" fair notice of its scope, thus denying due process under the Fifth Amendment.

The second half of the jurisdictional element in §2422(b), "any... means of interstate or foreign commerce," also fails the test of vagueness due to the nearly endless subjects which it could encompass, but also because of the range of situations which the court applies it to.

Again turning to the touchstone of "common understanding and practice", *Hunt, supra, at 743,* a person of ordinary intelligence would look at the plain language in the statute and define a "means" as "something used to do something." More properly, someone might say "something used to achieve a result, or desired goal." When read in the context of §2422(b), a "means of interstate or foreign commerce" would be commonly understood to say "something used to achieve or accomplish interstate or foreign commerce." The literal definition of this term would allow anything from a pencil and paper to your own voice to be included in those "means," but it is commonly understood that the government does not regulate absolutely everything which stands a chance of being

used in some vague way to achieve a commercial transaction. Likewise, it is commonly understood that the government has the power to regulate commercial activity between the States, but not over local issues which are unrelated to commerce. Thus, there is a natural assumption that the things prohibited by §2422(b) must not only be capable of use during commercial activity, but also must be things which are being actively used for the purpose of interstate commerce.

The Supreme Court tells us that the natural meaning of a key term takes account of both the things used and the manner in which a defendant uses them. See Bond, supra, at 2090. As a matter of natural meaning, an ordinary person would not describe the defendant's crime as involving a "means of interstate or foreign commerce." Saying that someone used a "means of interstate commerce" conveys a very different idea than saying they "used the internet to send emails."

In common practice, the internet is not used primarily for interstate or foreign commerce. Most people using the internet do so for the purposes of research, social media, entertainment, or communications. The internet itself is a completely neutral medium. It only becomes a "means of interstate commerce" when actively employed for that purpose. Most people of ordinary intelligence understand this, and thus, would not assume that the term "any means of interstate or foreign commerce" applies to the use of emails or cell phones for non-commercial purposes.

Such a conclusion is even more permissible when we consider that, were we to assume that the internet and phones were both a "means of interstate or foreign commerce", it would mean that tens of thousands of teens every year would fall under the scope of this law and would receive mandatory sentences of 10 years to life in prison. This would not be a realistic interpretation of a law which was written to protect minors in the first place, but that is exactly what the Government insists that it means when they assert that no actual employment for commercial purposes is necessary.

This makes it clear that the term "a means of interstate or foreign commerce" would likely not be interpreted by a person of ordinary intellect as applicable to

the use of phones or the internet for what is believed to be strictly local, and definitely non-commercial purposes. The 11th Circuit's holding in *Hunt, supra*, that the touchstone of a vagueness inquiry "is the meaning of the statute in light of common understanding and practice", allows us to demonstrate how this term fails to give fair notice, as its application goes beyond the scope of what an ordinary person would reasonably expect it to reach, and it leaves individuals to guess at what it may or may not encompass. Thus, the statute violates due process under the Fifth Amendment.

As we have demonstrated, § 2422(b) is unconstitutionally vague, violating the Due Process Clause of the Fifth Amendment, and therefore cannot serve as an offense against the laws of the United States as required by 18 U.S.C. § 3231. The result of this is a lack of jurisdiction and failure to state an offense in the original indictment, and the conviction must be vacated.

Even if § 2422(b) were to survive the test for unconstitutional vagueness, as applied to this case, the alleged conduct is outside the sweep of the charging statute. The court has repeatedly held that 18 U.S.C. § 2422(b) is specifically meant to regulate the act of persuasion, inducement, enticement, or coercion. In the case of *United States v. Murrell*, 368 F.3d 1283 (11th Cir. 2004), the court said: "The underlying criminal conduct that Congress expressly proscribed in passing § 2422(b) is the persuasion, inducement, enticement, or coercion of the minor." The court then continues to quote from *United States v. Bailey*, 228 F.3d 637 (6th Cir. 2000), saying "Congress has made a clear choice to criminalize persuasion and the attempt to persuade..." *Id.*, at 639. See also *United States v. Lee*, 603 F.3d 904 (11th Cir.). In affirming this principle, the court recognized that § 2422(b) was intended to regulate the activity of "persuasion."

Part of a fair reading of statutory text is recognizing that "Congress

legislates against the "backdrop" of certain unexpressed presumptions. EEOC v. Arabian American Oil Co., 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed. 2d 274 (1991). As Justice Frankfurter put it in his famous essay on statutory interpretation, correctly reading a statute "demands awareness of certain presuppositions." Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 537 (1947). For example, we presume that a criminal statute derived from common-law carries with it the requirement of a culpable mental state — even if no such limitation appears in the text.— unless it is clear that the Legislature intended to impose strict liability. United States v. United States Gypsum Co., 438 U.S. 422, 437, 98 S.Ct. 2864, 57 L.Ed. 2d 854 (1978). To take another example, we presume, absent a clear statement from Congress, that federal statutes do not apply outside the United States. Morrison v. National Australia Bank Ltd., 561 U.S. 247, 255, 130 S.Ct. 2869, 177 L.Ed. 2d 535 (2010). So even though section 2422(b), read on its face, would cover an act of "persuasion" if committed by a U.S. citizen in Australia, we would not apply the statute to such conduct absent a plain statement from Congress.

Among the background principles of construction that the Supreme Court has recognized are those grounded in the relationship between the Federal Government and the States under our Constitution. It has long been settled, for example, that we presume federal statutes do not abrogate state sovereign immunity, Atascadero State Hospital v. Scanlon, 473 U.S. 234, 243, 105 S.Ct. 3142, 87 L.Ed. 2d 171 (1985), impose obligations on the States pursuant to section 5 of the Fourteenth Amendment, Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 16-17, 101 S.Ct. 1531, 67 L.Ed. 2d 694 (1981), or preempt state law, Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).

Closely related to these is the well-established principle that "'it is encumbent

upon the federal courts to be certain of Congress's intent before finding that federal law overrides'" the "usual constitutional balance of federal and state powers." Gregory v. Ashcroft, 501 U.S. 452, 460, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (quoting Atascadero, supra, at 243; 105 S.Ct 3142).

  To quote Frankfurter again, if the Federal Government would "'radically readjust[] the balance of state and national authority, those charged with the duty of legislating [must be] reasonably explicit'" about it. BFP v. Resolution Trust Corporation, 511 U.S. 531, 544, 114 S.Ct 1757, 128 L.Ed.2d 556 (1994) (quoting Some Reflections, supra at 539-540; second alteration in original). Or, as explained by Justice Marshall, when legislation "affect[s] the Federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision." United States v. Bass, 404 U.S. 336, at 349, 92 S.Ct 515, 30 L.Ed.2d 488 (1971).


  Under our federal system, the "'States posess primary authority for defining and enforcing the criminal law.'" Brecht v. Abrahamson, 507 U.S. ___, ___ (1993) (Slip op., at 14) (quoting Engle v. Isaac, 456 U.S. 107, 128 (1982)). When Congress criminalizes conduct already denounced by the States, it effects a "'change in the sensetive relation between federal and State criminal jurisdiction.'" United States v. Emmons, 410 U.S. 396, 411-412 (1973) (quoting United States v. Bass, 404 U.S. 336, 349 (1971)).

  According to cases like Murrell, Bailey, and Lee, Congress specifically intended to criminalize the act of "persuasion." There are two problems with this: The first problem is that §2422(b) "dramatically intrudes upon traditional state criminal jurisdiction," and we avoid reading statutes to have such reach in the absence of a clear indication that they do. Bass, supra, at 350. The activity of "persuasion"

pg. 10

is an intrastate activity of the sort that is already addressed by Florida law. See FL statutes prohibiting soliciting minors, soliciting a parent or guardian, unlawful use of a two way communication device, travelling to meet a minor for sex after electronic lure, commercial sex offenses, etc. Lacking a clear statement from Congress, §2422(b) cannot be read "to have significantly changed the federal-state balance." Id., at 349. Thus, 2422(b) should not be read to be applicable to purely local offenses; as doing so would "displace state policy choices in ... that its prohibitions apply even in States that have chosen not to outlaw the conduct in question." United States v. Lopez, 514 U.S. 548, n. 3 (1995); see also Jones v. United States, 529 U.S. 848, 859, 120 S.Ct. 1904, 146 L.Ed. 2d 902 (2000) (Stevens, J., concurring) (federal prosecution of a traditionally local crime "illustrates how a criminal law like this may effectively displace a policy choice made by the State.")

The second problem with §2422(b) is that "persuasion" is an activity. Furthermore, it is a purely intrastate activity. Therefore, it is neither an instrumentality nor a channel of interstate commerce. While it is true that Congress may regulate instrumentalities and the use of channels of interstate commerce, the courts have already established that this is not the purpose of §2422(b). Murrell, supra, (holding that "The underlying criminal conduct that Congress expressly proscribed in passing §2422(b) is the persuasion, inducement, enticement, or coercion of the minor..."). It will no doubt be argued that the term "any facility or means of interstate commerce" is meant to invoke Congress's power to regulate the instrumentalities and the use of channels of interstate commerce, but this is simply not what the statute says. Although it could have easily done so, the statute does not prohibit using instrumentalities or channels of commerce to "persuade" a minor. In fact, not only did Congress leave the statute unchanged after it was given the opportunity to demonstrate its desire to exercise their power

to regulate instrumentalities and channels of commerce in 1998, (See H.R. 3494, §101, 105th Cong. 2d Sess. (1998)(proposing an amendment to §2422(b) which would have explicitly criminalized the act of conducting a minor, with no other tie to commerce at all)), but it has remained the same until this day. This leads us to believe the Supreme Court, stating "time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there," Connecticut Nat'l Bank v. Germain, 503 U.S. 249, at 254 (1992)(citations omitted); see also United States v. Sepulveda, 115 F.3d 882, 895 n. 5 (11th Cir. 1997)(observing that plain language governs statutory interpretation because amendments may be made "to clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases.")(quoting Hawkins v. United States, 30 F.3d 1077, 1082 (9th Cir. 1994). The court has also considered and rejected the argument that the plain meaning of a statute is undermined if the "legislative history points to a different result." (certain, id. IF Congress wants the statute to prohibit using channels or instrumentalities to commit "persuasion," then it may say so.

Since it is clear that §2422(b) does not prohibit using an instrumentality or a channel of interstate commerce, and as circuit precedent already recognizes that 2422(b) specifically criminalizes "persuasion," we must acknowledge that the statute does indeed regulate an activity. Furthermore, as Congress saw fit to include three separate jurisdictional elements in the statute (those of the mail, commerce, and maritime or territorial jurisdiction), we can plainly see that "persuasion" does not require a connection to commerce at all. This further demonstrates that the statute does not constitute an exercise of the power to regulate instrumentalities or channels of interstate commerce, while at the same time conclusively showing us that "persuasion" is indeed a purely intrastate activity, as it can be achieved without using the mail, crossing state lines, or using a facility or means of interstate commerce.

Congress's power to regulate intrastate activities is more limited than its power to regulate the instrumentalities and channels of interstate commerce. Whereas Congress may regulate any instrumentality or channel of interstate commerce, the Constitution permits Congress to regulate only those intrastate activities which have a substantial effect on interstate commerce, and such regulation of purely intrastate activity reaches the outer limits of Congress's Commerce power.

To hold otherwise would "convert congressional authority under the Commerce Clause to a general police power of the sort retained by the states." Lopez, 514 U.S. at 567. This the Constitution does not permit. Id.; see also Maryland v. Wirtz, 392 U.S. 183, 197, n. 27 (1968) (the Constitution does not permit Congress to use a relatively trivial impact on commerce as an excuse for broad general regulation of state or private activities).

When the regulated intrastate activity is a commercial or economic one, the Constitution permits the substantial effect on interstate commerce to be located in the aggregate impact of the regulated activity upon interstate commerce. Wickard v. Filburn, 317 U.S. 111 (1942). The Constitution permits such aggregation of effects to justify congressional regulation of purely intrastate economic activity when "the absence of such regulation would undercut a larger regulatory scheme affecting interstate commerce." Lopez, 514 U.S. at 561.

No such aggregation of local effects is Constitutionally permissible in Congressional regulation of intrastate non-economic activity. United States v. Morrison, 529 U.S. 598, 617 (2000). Where such regulation is at issue, the Constitution requires that the activity, by itself, have economic consequences that substantially affect interstate commerce. Lopez, 514 U.S. at 561. No aggregation of local effects is permissable to elevate a non-economic activity's insubstantial effect on interstate commerce into a substantial one in order to support federal jurisdiction. Id.

This is especially true when Congress seeks to federalize common-law state crimes.

Morrison, 529 U.S. at 617. In Morrison, the Court explicitly "reject[ed] the argument that Congress may regulate non-economic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." Id. The Court made it clear that "a fair reading of Lopez shows that the non-economic, criminal nature of the conduct at issue was central to our [rejection of such regulation] in that case." Id., at 610.

To allow Congress to regulate local crime on a theory of its aggregate effect on the national economy would give Congress a free hand to regulate any activity, since, in the modern world, virtually all crimes have at least some attenuated impact on the national economy. Morrison, at 615. Furthermore, it would transfer to Congress a general police power that the Constitution denies the federal government and reposes in the states. Id., at 618 ("The regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States").

The 11th Circuit observed in United States v. Odom, 252 F.3d 1289, 1295 (2001), that in view of Lopez and Morrison, the "mere engagement in commercial activities may not necessarily provide the requisite nexus between the function of [a property] and interstate commerce." In order to avoid the constitutional problem that would arise were §844(i) interpreted to apply to criminal conduct without a sufficient commerce nexus, the court concluded that its jurisdictional element had to be construed in accord with the requirements of the Commerce Clause, as explained in Lopez, Morrison, and Jones v. United States, 529 U.S. 848, 859 (2000) (distinguishing "active employment" from "merely a passive, passing, or past connection to commerce"). Thus, the court held that the statute required the government to prove that the burned church's activities had a "substantial effect" on interstate commerce. Odom, 252 F.3d at 1297.

In Odom, 252 F.3d at 1296, the court said: "Allowing the government to meet

pg. 14

the interstate commerce requirement through only a nominal showing of connection to interstate commerce would do as much to 'completely obliterate' the distinction between national and local authority as if no jurisdictional requirement existed at all. The presence of a jurisdictional element may preserve the constitutionality of the statute so long as a case-by-case analysis requires sufficient proof of a connection to interstate commerce. Otherwise, Congress could circumvent the requirement of the constitution's interstate commerce clause by inserting a jurisdictional element into every statute and allowing the government to rely on the most minimal proof of that element. (emphasis added) (citations omitted)."

These precedents make it clear that for § 2422(b) to reach the defendant's conduct in this case, the government must prove that the activity of "persuasion" standing alone, has a substantial effect on interstate commerce. If not, then the district court should not have accepted the defendant's plea of guilty and entered a judgment of guilty.

The only issue left in this case is whether the stipulated facts were in fact sufficient to establish that the activity of "persuasion" had a substantial effect on interstate commerce. Defendant asserts that they were not, and as a result, his actions lie outside of the charging statute.

Thus, Defendant respectfully requests that the Court enter its order to vacate the sentence of guilty and terminate the proceedings against him, pursuant to this motion under Rule 12(b)(3)(B) Fed.R.Crim.P. and upon the subsequent finding of a defective indictment.

Defendant also requests that the records and materials pertaining to his plea of guilty, the content of the written plea deal, and the subsequent conviction, be sealed to the court and barred from use in any future proceedings as remedy for "governmental action taken in excess of the authority federalism defines" Bond v. United States, 564 U.S. __, __, 131 S.Ct. 2355, 2363-2364, 180 L.Ed.2d 269 (2011).

# VERIFICATION

   I, JONATHAN TYLER PRIVE, Defendant in the above-styled action, do hereby verify that the factual information contained herein is true and correct based on my knowledge and belief.

Jonathan T. Prive

   Respectfully submitted on this, the 27th day of March, 2015.