UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**VS.**                                              CASE NO: 6:14-cr-33-Orl-28KRS

**JONATHAN TYLER PRIVE**

### MEMORANDUM ORDER

A grand jury returned an indictment against Defendant Jonathan Tyler Prive charging enticement of a minor (Count One) and attempted enticement of a minor (Count Two). (Indictment, Doc. 1). For reasons not apparent in the record, the Government entered into a plea agreement with Defendant providing that Defendant would plead guilty to Count Two, which charged attempted enticement, and the Government would dismiss Count One. Defendant is now before me for sentencing on Count Two, and both parties have raised issues regarding proper scoring under the United States Sentencing Guidelines ("USSG"). Defendant argues that facts underlying Count One should not be used in the scoring, and the Government argues that the total offense level should be increased under USSG § 4B1.5(b)(1) because Defendant's conduct constitutes a pattern of activity involving prohibited sexual conduct. Both arguments have merit.

I. Background

The facts of this case are singularly shocking and tragic, suggesting that man's capacity for depravity is without limits. Unfortunately, Defendant and Michael Glascock met online as they pursued their mutual interest in sexually abusing young children. (See Plea Agreement, Doc. 27, at 18 & 26). In email communications, Glascock described to Defendant in detail how he sexually abused his three-year-old daughter. (See id. at 18-

19). Defendant liked what he read and expressed his desire to also sexually abuse the child. (See id.). The men then entered into a plan to fulfill Defendant's wish. (Id. at 19-21). On September 10, 2013, that plan was executed; Defendant traveled to Glascock's house, where both men sexually abused the child. (Id. at 21 & 26). Glascock watched as Defendant rubbed his penis against the child's vagina, placed his penis in the child's mouth, touched the child's vagina with his hand, and ejaculated on the child's stomach. (Id. at 26).

After Defendant abused the child, the men exchanged email messages expressing the gratification and pleasure they felt from inflicting the abuse. (Id. at 21). Defendant told Glascock that he wished he had more time to abuse the child during his visit and that in the future he would like to engage in yet other forms of abuse. (Id. at 21-22). Glascock stated that he would like to help Defendant abuse the child again in the future. (Id.). From September 11, 2013, through October 11, 2013, Defendant continued to discuss with Glascock plans to meet again at Glascock's house when Glascock's wife was out. (Id.). These disturbing conversations included descriptions of the violence the men intended to inflict on the child. (Id. at 22). Eventually, the men agreed to meet on October 11, 2013, but the plan failed because Defendant could not get to Glascock's house at a time Glascock's wife was out. (Id.).

Before plans for a second encounter were in place, Glascock was arrested, and an undercover agent began participating in the conversation pretending to be Glascock. (Id.). On November 4, 2013, the undercover agent, posing as Glascock, suggested that the next morning would be a good time for Defendant to again abuse the child. (Id. at 23). Defendant agreed that he would come to Glascock's house the next day, stating he wanted to penetrate the child's vagina and anus. (See id.). On the morning of November 5, 2013,

2

the undercover agent advised Defendant that Glascock's wife had left the house, and Defendant replied that he would be at Glascock's house within the hour. (Id. at 24). Defendant asked the undercover agent whether he needed to bring "lube," and the undercover agent answered that he was "about out." (Id. at 24-25). While Defendant was on his way to Glascock's house with lubricant, deputies of the Brevard County Sheriff arrested Defendant and advised him of his Miranda rights. (Id. at 25). While in the custody of the Brevard County Sheriff, Defendant made statements confirming his earlier sexual abuse of Glascock's daughter, describing various ways in which he committed the abuse. (Id. at 25-26).

On August 26, 2014, Defendant entered into a plea agreement with the Government. (See id. at 16). The Plea Agreement signed by Defendant stated that "Defendant is pleading guilty because [he] is in fact guilty. [Defendant] certifies that [he] does hereby admit that the facts set forth in the attached 'Factual Basis,' which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt." (Id. at 15-16). The Factual Basis included the details described above and the statement that "in September of 2013, [Defendant] and [Glascock][1] participated in the sexual abuse of [Glascock's daughter] at [Glascock's] home in Brevard County." (Id. at 17).

Separately, Glascock entered guilty pleas to one count of Sexual Exploitation of a Minor for the Purpose of Producing Child Pornography, 18 U.S.C. § 2251(a) and (e), and

---

[1] The Factual Basis does not mention Glascock by name, but it refers to Middle District of Florida Case No. 6:14-cr-34-Orl-28DAB, which is the case in which Glascock was charged with eight counts, including sexual exploitation of a child; sexual enticement of a child; and receipt, possession, and distribution of child pornography.

one count of Attempted Sexual Enticement of a Minor, 18 U.S.C. § 2422(b). Under the United States Sentencing Guidelines, Glascock had a Total Offense Level of 43 and fell in Criminal History Category I. He was sentenced to life in prison. Glascock's illegal activities were not limited to this case. Glascock also traded pornographic pictures depicting himself sexually abusing his three-year-old daughter to William Osman. In exchange for the lurid photographs of Glascock's daughter, Osman sent Glascock pornographic pictures of himself abusing his own one-year-old daughter. Osman entered guilty pleas to one count of Production of Child Pornography, 18 U.S.C. § 2251(a) and (e), one count of Distribution of Child Pornography, 18 U.S.C. § 2252A(a)(2)(B), and one count of Possession of Child Pornography, 18 U.S.C. § 2252A(a)(5)(B). Osman's Total Offense Level was 43, and he fell within Criminal History Category III. Osman received a sentence of 720 months in prison.

## II. Proposed Guidelines Calculations

In crafting a reasonable sentence, the trial court must first correctly calculate the range of sentences called for by the Guidelines. The Probation Office prepared a Presentence Investigation Report, including proposed findings required to calculate a correct advisory Guidelines range. The Probation Office recommends a Total Offense Level of 37. This includes a base offense level of 28, and the following upward adjustments under USSG § 2G1.3:

- Use of a computer (+2 levels) under USSG § 2G1.3(b)(3)(B)
- Commission of a sex act or sexual contact (+2 levels) under USSG § 2G1.3(b)(4)(A)
- Involving a minor who had not attained the age of 12 (+8 levels) under USSG § 2G1.3(b)(5)

4

These upward adjustments result in an Adjusted Offense Level of 40. However, Defendant is entitled to the following downward adjustments under USSG § 3E1.1:

- Acceptance of responsibility (-2 levels) under USSG § 3E1.1(a)
- Assistance to authorities (-1 level) under USSG § 3E1.1(b)[2]

Thus, the Total Offense Level recommended by the Probation Office is 37. Defendant has no criminal history points, placing him in Criminal History Category I, with a proposed advisory range of 210–262 months.

## III. Defendant's Objections to Proposed Guidelines Calculations

Defendant objects to the proposed sentencing enhancements for relevant conduct. The applicability of enhancements under USSG § 2G1.3 are determined by a defendant's relevant conduct, which includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense" as well as all harm resulting from, or the object of, those acts or omissions. USSG § 1B1.3(a).[3] It

---

[2] In its latest memorandum (Doc. 93), the Government notes that Defendant sought to withdraw his plea and has had numerous conflicts with his counsel, (see Docs. 48, 66, & 84), and that a magistrate judge has found that "it is evident that Defendant . . . is taking steps to delay being sentenced on this case," (Doc. 86). Based on this behavior, the Government notes that these downward adjustments under USSG § 3E1.1 may no longer apply to Defendant. (Doc. 93 at 4). However, "[i]n an effort to avoid any further delays in this matter, the Government does not plan to seek the removal of the three-level downward adjustment for acceptance of responsibility." (Id.). The § 3E1.1 downward adjustments will be applied to calculate Defendant's Total Offense Level.

[3] This is a narrower test than the "same course of conduct or common scheme or plan" that governs "offenses of a character for which § 3D1.2(d) would require grouping of multiple counts." USSG § 1B1.3(a)(2). Section 3D1.2(d) does not appear to govern § 1B1.3, and there is no argument from the Government or Probation Office that it does. The

is intended that this Guidelines provision be interpreted broadly, United States v. Behr, 93 F.3d 764, 765 (11th Cir. 1996) (per curiam), and that relevant conduct include more than the facts necessary to prove the offense of conviction.

Relevant conduct enhancements under USSG § 2G1.3 may be used to increase an offense level because that conduct relates to the manner in which the crime was committed. To that extent, a sentencing court may consider "conduct underlying the acquitted charge," United States v. Watts, 519 U.S. 148, 157 (1997) (per curiam), as well as conduct alleged in counts dropped by the Government pursuant to a plea agreement, United States v. Scroggins, 880 F.2d 1204, 1211 (11th Cir. 1989) (applying prior version of Guidelines). But if the conduct does not bear on the manner in which the defendant committed the crime of conviction, the enhancements may not be used to punish crimes for which defendants were not convicted. See United States v. Faust, 456 F.3d 1342, 1347 (11th Cir. 2006) (quoting Watts, 519 U.S. at 154).

Each of Defendant's objections to the proposed enhancements for relevant conduct is addressed separately.

A. *Defendant's objection to increase* under *USSG § 2G1.3(b)(4)(A)*

Defendant objects to the scoring of two additional points under USSG § 2G1.3(b)(4)(A) for his sexual battery of Glascock's daughter. This Guidelines provision instructs that if "the offense involved the commission of a sex act or sexual contact" the Guidelines score should be increased by two levels. The basis of Defendant's objection is that his sexual contact with Glascock's child in September 2013 was not involved in his

---

Government also does not assert that Defendant's conduct constitutes "jointly undertaken criminal activity" to which § 1B1.3(a)(1)(B) applies.

6

crime of Attempted Enticement in November 2013. That sexual contact, he argues, should not be scored because it was the basis for Count One, which the Government agreed be dismissed. In response, the Government argues that the sexual acts with the child constitute conduct relevant to the attempted enticement charge because the conduct occurred in preparation of and during the commission of the attempted enticement.

The Government provides no evidence in support of its argument that the sexual abuse was done in preparation of the attempted enticement, and I cannot make such a connection. But the Government's argument that the sexual conduct occurred during the commission of the enticement offense presents a more difficult question. The phrase "during the commission of" connotes simultaneous temporal conduct. See United States v. Dunlap, 279 F.3d 965, 966 (11th Cir. 2002) ("Under any ordinary interpretation of the word 'during,' if [defendant] possessed the sadistic images when he (in May 1998) transmitted the child pornography, then the possession is 'relevant conduct.'"); USSG § 1B1.3 cmt. background ¶ 3 (distinguishing relevant conduct under § 1B1.3(a)(1) & (a)(2) ("On the other hand, in a robbery case in which the defendant robbed two banks, the amount of money taken in one robbery would not be taken into account in determining the guideline range for the other robbery, even if both robberies were part of a single course of conduct or the same scheme or plan. (This is true whether the defendant is convicted of one or both robberies.)")); see also United States v. Davis, 453 F. App'x 452, 462 (5th Cir. 2011) ("[A]lleged misconduct with [victim] did not occur during . . . offense of conviction, as it was alleged to have happened on and before February 22, 2005, while . . . charged conduct with [another victim] occurred from on or about June 1, 2006 to September 22, 2006."); United States v. Batchu, 724 F.3d 1, 10 (1st Cir. 2013) ("[F]or the district court to

7

enhance Batchu's sentence based on the video of Victim C, the video must have been made 'during' his relationship with Minor A [which was the basis for his conviction].").

I found no reported case with facts identical to those in this case. But in United States v. Weiner, 518 F. App'x 358 (6th Cir. 2013), the Sixth Circuit determined that the defendant's prior sexual contact with three minor victims was not relevant conduct in calculating his Guideline score for attempted enticement of a minor. The court reasoned that the prior conduct did not occur during the commission of the conviction offense and "was not contemporaneous with the use of the computer as asserted in the Information." Id. at 365. Obviously, the case at bar is different. Here, the victim of the abuse in September was also the intended victim of Defendant's crime of Attempted Enticement in November. Also, Defendant continued his discussions regarding further abuse of the victim until he was arrested. These facts result in greater connectivity between the offenses, but it does not bring the earlier conduct within the definition of "relevant conduct" under § 1B1.3(a) and § 2G1.3(b)(4)(A), because that conduct did not take place during the commission of Count Two.

Accordingly, the two-level enhancement for "commission of a sex act or sexual contact" should not be applied to Defendant's Guideline score because his sexual conduct on September 10, 2013 is not "relevant conduct," and Defendant's objection to the two-level increase in his proposed Guidelines score is sustained.

B. *Defendant's related objection under Rule 403, Federal Rules of Evidence*

Defendant offers another basis to exclude evidence of Defendant's September 2013 abuse of Glascock's three-year-old daughter. He suggests that consideration of this evidence in crafting a sentence for the crime of conviction would violate Rule 403, Federal

8

Rules of Evidence. The rule states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." To the extent the motion seeks to avoid the two-level enhancement under § 2G1.3(b)(4)(A) for Defendant's sexual abuse of the child in September, Defendant's objection is denied as moot.

Rule 403, like most of the Federal Rules of Evidence, does not apply in sentencing proceedings. See Fed. R. Evid. 1101(d)(3). On this basis alone Defendant's objection is due to be overruled. However, even if Rule 403 did apply at sentencing it would not bar the evidence at issue here.

Certainly, Defendant's prior treatment of the child has bearing on § 3553 sentencing factors described in the statute. Most obviously, the conduct is relevant to subsection (1) of the statute—assessment of the nature and circumstances of the offense and the history and characteristics of Defendant. Facts pertaining to Defendant's abuse of the child with the assistance of the child's father are relevant to the seriousness of the intent of Defendant in attempting to carry out the enticement. Additionally, those facts explain the context of communications between Defendant and Glascock as well as later conversations between Defendant and the undercover agent posing as Glascock. Defendant's conduct and statements made leading up to and directly following his abuse of the child are also relevant in determining the punishment required to meet the purposes of sentencing in subsection (2) of the statute.

Of course, the above statutory considerations are essential in determining the need for the sentence imposed. In making that determination, subsection (2) of the statute mandates that the court consider what is necessary to afford adequate deterrence to

criminal conduct and to protect the public from further crimes. Accordingly, I will consider Defendant's sexual abuse of the child in analyzing the § 3553 factors. I will also consider the abuse of the child in determining the applicability of USSG § 4B1.5(b) because that conduct is probative in determining whether Defendant engaged in a pattern of activity involving prohibited sexual conduct.

### C. *Defendant's objection to increase under USSG § 2G1.3(b)(5)*

Defendant also objects to an eight-level enhancement under USSG § 2G1.3(b)(5), which applies if the offense involves a minor who has not attained the age of 12. This provision does not depend on the allegations contained in Count One, as Defendant suggests. Indeed, it applies to the facts constituting Defendant's crime of conviction. "Minor," as defined in the commentary, includes "an individual, whether fictitious or not, who a law enforcement officer represented to a participant (i) had not attained the age of 18 years, and (ii) could be provided for the purposes of engaging in sexually explicit conduct." USSG § 2G1.3 cmt. n.1. The actual three-year-old victim discussed by the law enforcement agent fits within the definition of "minor" in § 2G1.3. Because the intended victim—a real child—was under 12 years old, Defendant's communications with an undercover agent "involved a minor who had not attained the age of 12 years." Accordingly, the eight-level enhancement can be applied to Defendant's offense of conviction. United States v. Carver, 348 F. App'x 449, 451-52 (11th Cir. 2009) (per curiam) (holding that the enhancement applies in a similar situation involving a fictitious eleven-year-old victim).

Defendant's objection to the eight-level enhancement under USSG § 2G1.3(b)(5) is overruled.

*D. Defendant's objection to increase under USSG § 2G1.3(b)(3)(B)*

Defendant argues that the two-point increase for use of a computer or computer system constitutes double counting because the crime of conviction—attempted enticement of a child under 18 U.S.C. § 2422(b)—includes an interstate component as an element of the offense. Indeed, the statute requires the use of "mail or any facility or means of interstate or foreign commerce." But it is entirely possible for this requirement to be met without the use of a computer.

This objection is without merit, and it is overruled.

## IV. Government's Objection to Proposed Guidelines Score and its Proposed § 4B1.5(b) Enhancement

Earlier in the sentencing hearing, the Government for the first time raised an objection to the Probation Office's proposed Guidelines calculation, contending that USSG § 4B1.5(b), Repeat and Dangerous Sex Offender Against Minors, applies to Defendant's Guidelines sentence. The Government then filed a memorandum in support of its position. (Doc. 93). Under this provision, an additional five levels are added to the Total Offense Level "[i]n any case in which the defendant's instant offense of conviction is a covered sex crime, neither § 4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct." USSG § 4B1.5(b). Defendant filed his written argument in opposition to enhancement (Doc. 94) on the ground that his conduct did not involve a "pattern of activity" because Defendant only engaged in prohibited sexual conduct with a minor on one occasion.

The first two requirements of § 4B1.5(b) are not at issue. An offense against a minor under chapter 117 of title 18, United States Code is a covered sex crime. Defendant's crime of conviction—attempted enticement of a minor in violation of 18 U.S.C. 2422(b)—is

included in chapter 117 and thus is a covered sex crime. Also, neither § 4B1.1 nor § 4B1.5(a) applies. The only question requiring discussion is whether the third requirement of § 4B1.5(b)—that "defendant engaged in a pattern of activity involving prohibited sexual conduct"—is present in this case.

"Prohibited sexual conduct" under this subsection includes "any offense described in 18 U.S.C. [§] 2426(b)(1)(A) or (B)," which includes offenses in chapter 117[4] such as § 2422(b), the statute Defendant was charged with violating in Counts One and Two. See USSG § 4B1.5 cmt. n.4(A); 18 U.S.C. § 2426(b)(1)(A). Prohibited sexual conduct encompasses uncharged conduct. United States v. Castleberry, 594 F. App'x 612, 613 (11th Cir. 2015) (per curiam). Defendant's admitted conduct pertaining to Counts One and Two—including the actual enticement and the subsequent attempted enticement of the child—constitutes prohibited sexual conduct. Additionally, the Internet conversations with Glascock and an undercover agent between September 11, 2013, and November 4, 2013, in which Defendant further sought to abuse Glascock's daughter constitute separate instances of prohibited sexual conduct as attempted enticement under 18 U.S.C. § 2422(b). See United States v. Rothenberg, 610 F.3d 621 (11th Cir. 2010); Castleberry, 594 F. App'x 612.

---

[4] At the sentencing hearing, Defendant argued that offenses under chapter 117 were not covered within the meaning of "prohibited sexual conduct." However, § 2426(b)(1)(A) includes offenses "under this chapter." Section 2426 is located within chapter 117, so I find that conduct within chapter 117 is prohibited conduct under § 4B1.5. Moreover, even if Defendant's argument on this issue had merit, Defendant's conduct would qualify as "prohibited sexual conduct" because it would constitute offenses under Florida state law—namely, sexual battery and child abuse—that would be an offense under chapter 109A if the conduct occurred within the territorial jurisdiction of the United States. See 18 U.S.C. §§ 2426(b)(1) & 2241.

The only question, then, is whether Defendant's conduct constitutes a *pattern of activity*. On this issue, the Guidelines provide:

> (B) Determination of Pattern of Activity.—
>
> (i) In General.—For purposes of subsection (b), the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor.
>
> (ii) Occasion of Prohibited Sexual Conduct.—An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion.

USSG § 4B1.5 cmt. n.4(B).

Defendant's conduct clearly fits within this definition. By comparison, just one additional prohibited Internet chat with a minor, when added to the offense of conviction, can constitute a pattern of activity. Rothenberg, 610 F.3d at 625 n.5; Castleberry, 594 F. App'x at 613. Here, Defendant engaged in many instances that constitute a pattern of activity—his September 2013 abuse of the child and his multiple instances of attempted and successful enticement of the child. Accordingly, the Government's objection is sustained. Defendant engaged in a pattern of activity involving prohibited sexual conduct, and the five-level adjustment shall be applied.

## V. Final Guidelines Score

Based on the findings above, I find that Defendant's Total Offense Level under the Guidelines is 40 and that he falls within Criminal History Category I. This score produces an advisory Guidelines range of 292-365 months in prison.

## VI. Statutory Sentencing Factors

13

It is the duty of a sentencing court to impose a sentence that is sufficient but not greater than necessary to meet the statutory purposes of sentencing. In meeting that mandate a court must consider the advisory Guidelines as well as the factors set forth in 18 U.S.C. § 3553(a)(1)-(7). In determining a reasonable sentence in this case I have considered all factors contained in the statute, including the following:

### A. 18 U.S.C. § 3553(a)(1)—Nature and Circumstances of the Offense

The nature and circumstances of this offense weigh against a lenient sentence. "Child sex crimes are among the most egregious and despicable of societal and criminal offenses . . . ." United States v. Sarras, 575 F.3d 1191, 1220 (11th Cir. 2009). The victims of these crimes are the most vulnerable members of our society, and civilization is measured to some degree on how well it protects its young from those who would abuse them. The harm from these types of crimes is long-lasting; children who are sexually abused will often have difficulty maintaining normal relationships in the future.

The statute under which Defendant was convicted protects children under the age of 18, and USSG § 2G1.3(b)(5) assesses additional Guidelines Offense Levels if the victim of the crime is under 12. In considering the nature of Defendant's crime, it is appropriate to consider the fact that his victim was only three years old; this weighs against a lenient sentence. Also bearing on the nature and circumstances of this case are the graphic descriptions of abuse the Defendant intended to inflict as well as his resolve in carrying out this type of abuse, as evidenced by his previous abuse of the child victim, his continuous efforts to schedule another opportunity for future abuse, and his preparation to again abuse the child by stopping to get "lube" on his way to Glascock's house. But for the intervention of law enforcement, Defendant most certainly would have sexually abused the child again.

B.  *18 U.S.C. § 3553(a)(1)—The History and Characteristics of Defendant*

Other than the crimes that bring Defendant before the Court, there is nothing remarkable about Defendant's history. His childhood was free from abuse, and though he came from a broken home, he had a good relationship with relatives. (Presentence Investigation Report, Doc. 82, ¶ 52). Defendant generally enjoys good physical health, although he was discharged from the United States Marine Corps due to sleep problems. (Id. ¶¶ 55-56). He withdrew from high school to join the Marines, but he obtained his high school diploma and attended college. (Id. ¶¶ 58-59). It is obvious to me that Defendant is intelligent.

The most specific facts available bearing on characteristics of Defendant are contained in his discussions about his abuse and intended abuse of the child victim in this case. Although his conversations with Glascock and the undercover agent are repugnant, they do reflect on Defendant's character. Indeed, rarely is insight into any defendant's character so readily available. Defendant's many statements include the following:

- Before Defendant's abuse of Glascock's daughter:
  - "In my fantasy I'd sit on the couch with a girl on my lap and slide my fingers into her little panties and finger her clit while we watched cartoons. Then I'd undress her once she was wet and wiggling her hips and sit with my cock between her thighs and rub it up and down her little cunt while she held the tip. Then when the cartoon was done I'd take her to the bedroom to play. I'd have her lick and suck on the tip while she laid on my chest and I played with her tight little butt. I'd use a whole bunch of lube and play with her ass until she was loose enough to slip my pinky inside. Then

15

> I'd finger her while she held my cock and played with it. Want to hear more? Tell me what new stuff you've [sic] with her in your fantasies and I'll go on." (Plea Agreement at 19).

- o "After fingering her for long enough to get her nice and loose. I'd add another finger and keep going while she laid on my stomach, panting, and squirming. Then when she couldn't take it anymore, I'd lay her on her back and slide the head of my cock up and down her little cunt, getting it all wet and slippery with pre cum. I'd push the head tight against her little cunt and shoot it inside her, filling her up. . . . you thinking of taking another shot at getting together?" (Id. at 19).

- After the abuse of Glascock's daughter:
    - o "Hell yeah. I wish that we had more time though. (and more lube too. Lol) Then we could have tried some other things." (Id. at 21).
    - o "[Y]ou may want to think about your boy some more. He seemed pretty smart, and putting him in his room every time will make him mad and ask questions . . . ." (Id.).

- Regarding plans to further abuse Glascock's daughter:
    - o "That really sucks. I cant get there by then and still have enough time to help you finger her and fill her with cum. Think maybe I could have a couple naughty pics of her little holes spread open for me? (Id. at 22).
    - o "I'd love to pop her cherry and put fingers in both her holes before filling her little cunt with cum :) . . . . I'd like to come at about 10:30 or 11, that way we have plenty of time to play with your daughter and fill her holes

> > up with fingers and cum ;) . . . . I'm looking forward to seeing how far we can stretch her out and how much cum we can put in her ;) (Id. at 23-24).
> 
> o "I can be there in about 45 minutes if you give the address again. And do I need to bring some lube, or do you have some?" (Id. at 24-25).

These statements reveal Defendant's appetite for cruelty; as soon as he had completed various forms of sexual battery on the child, he began planning for another session involving even more despicable conduct.

These statutory factors weigh against a lenient sentence.

C. *18 U.S.C. § 3553(a)(6)—Need to Avoid Unwarranted Sentencing Disparity*

It is always a goal to avoid unwarranted sentencing disparity. Some crimes, such as drug offenses and child pornography, are common, and it is therefore easy to assess how a sentence compares with others. The crime of enticement is not as common as many other crimes, so there are not as many comparators. And, in this case, there are unusually detailed facts of Defendant's crime and character. At least two other individuals—Glascock and Osman—committed related offenses and were sentenced to lengthy sentences. Considering their sentences, as well as others, there is no disparity in the sentence imposed here.

D. *18 U.S.C. § 3553(a)(7)—Need to Provide Restitution to Victims*

It is not clear that restitution is an issue in this case. To the extent it is, however, it is not a mitigating factor.

> E. *18 U.S.C. § 3553(a)(2)—The Need for the Sentence Imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner*

Because of the seriousness of the offense, the need to promote respect for the law, and to provide a just sentence, a sentence of at least 365 months' incarceration is required. This sentence is also needed to deter Defendant and others from committing similar crimes. A long prison term also will serve to deter others who would consider engaging in such despicable conduct. It is clear from Defendant's acts and statements that the public—particularly its vulnerable children—requires protection that can only be provided by a lengthy term of imprisonment.[5]

## VII. Reasonable Sentence

After considering the § 3553 sentencing factors, I find that a sentence of 365 months of incarceration is sufficient but not greater than necessary to comply with the statutory purposes of sentencing. Defendant's sentence would be the same if I had sustained his objections to the proposed Guidelines score and I had overruled the Government's objection. A sentence of less than 365 months would not be reasonable under the facts of this case.

**DONE** and **ORDERED** in Orlando, Florida on April 27, 2015.

JOHN ANTOON II
United States District Judge

Copies furnished to:
United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Jonathan Tyler Prive

---

[5] I have also considered the other statutory factors specified in §§ 3553(a)(3), (4), and (5), including the Guidelines range.