```
1              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
2                   ORLANDO DIVISION

3              Docket No. 6:14-cr-33

4  . . . . . . . . . . . . .
   UNITED STATES OF AMERICA    :
5                              :
                               :          Orlando, Florida
             Plaintiff         :          April 15, 2015
6                              :          10:00 a.m.
                               :
7            v.                :
                               :
8  JONATHAN TYLER PRIVE        :
                               :
9            Defendant         :
   . . . . . . . . . . . . .

10                   VOLUME 1

11          TRANSCRIPT OF SENTENCING
        BEFORE THE HONORABLE JOHN ANTOON, II
12          UNITED STATES DISTRICT JUDGE

13

14  APPEARANCES:

15

16  For the Plaintiff:  Andrew Searle

17

18  For the Defendant:  Daniel Broderson

19

20
    Court Reporter:     Sandra K. Tremel, RMR/CRR
21                      407-288-6343, sandy.tremel@gmail.com

22

23

24  Proceedings recorded by mechanical stenography, transcript

25  produced by computer-aided transcription.
```

```
1                P R O C E E D I N G S
2         THE DEPUTY CLERK:  This is the case of United
3    States of America v. Jonathan Tyler Prive, case number
4    6:14-CR-33.
5      Will counsel please state their appearances for the
6    record.
7         MR. SEARLE:  Good morning, Your Honor.  Andrew
8    Searle for the United States.  Sitting with me is Agent Mike
9    Spadafora.
10        MR. BRODERSON:  Good morning, Your Honor.  Daniel
11   Broderson on behalf of Jonathan Prive, who's seated to my
12   left.
13        THE COURT:  Mr. Prive, would you stand, please,
14   and raise your right hand.
15                  (Defendant sworn)
16        THE DEFENDANT:  I do.
17        THE COURT:  What is your full name, sir?
18        THE DEFENDANT:  Jonathan Tyler Prive.
19        THE COURT:  And Mr. Prive, have you had any pills,
20   drugs, medication or alcohol within the past 48 hours?
21        THE DEFENDANT:  No, Your Honor.
22        THE COURT:  Have you been under the care of
23   psychiatrist or a psychologist for a mental or emotional
24   disorder in the past?
25        THE DEFENDANT:  No, sir.
```

```
 1              THE COURT:  Do you believe that you suffer from
 2   such a disorder now?
 3              THE DEFENDANT:  No, sir.
 4              THE COURT:  Are you thinking clearly and
 5   exercising your best judgment this morning?
 6              THE DEFENDANT:  Yes, sir.
 7              THE COURT:  Thank you, sir.
 8        You may be seated.
 9        Mr. Prive, on August 27, 2014, you entered a plea of
10   guilty to Count 2 of the indictment charging you with an
11   attempted enticement of a minor in violation of 18, United
12   States Code, Section 2422(b).  I have previously accepted
13   your guilty plea and adjudged you guilty of that offense.
14        We have now reached that stage in the proceedings where
15   I need to ask questions of you, your attorney, and counsel
16   for the government.  First, have you had an opportunity to
17   read and discuss with Mr. Broderson the presentence report?
18              THE DEFENDANT:  Yes, sir, Your Honor.
19              THE COURT:  Do you have any objections as to the
20   factual accuracy of the report?
21              MR. BRODERSON:  Your Honor, may I?
22              THE COURT:  Yes, sir.
23              MR. BRODERSON:  Judge, first of all, for the
24   record, I need to make a statement as it relates to the
25   motion to withdraw that I previously filed, understanding
```

1    that it's been denied by the Court.  But Mr. Prive has a

2    motion that he's been insisting be filed in a case related

3    to the constitutionality of the statute, which ethically I

4    believe should not be filed, but he –– and that's the reason

5    why I filed my motion to withdraw, but he insists and he

6    wanted me to raise that issue with the Court prior to

7    sentencing, that he wanted to be able to file the motion on

8    his own since I would not file it for him.

9              THE COURT:  Has the government seen the motion?

10             MR. SEARLE:  No, Your Honor.

11             THE COURT:  Is it written?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Government wish to be heard?

14             MR. SEARLE:  Your Honor, I think we have been here

15   before with regard to the defendant's prior counsel.  We had

16   a hearing where the defendant made allegations that the

17   Court ultimately determined to be untrue with regard to that

18   prior counsel.  Your Honor, at this point, I think that it's

19   clear that what the defendant is doing is trying to delay

20   the sentencing based on the allegations he's made and the

21   motions he made.  I don't think that there's any –– I

22   haven't seen the motion.  To the extent that it touches upon

23   some of the things that the defendant referenced when he

24   testified at the prior hearing, I don't think there would be

25   any merit to it.

1        The case law in terms of these particular kinds of

2   offenses in the 11th Circuit is clear-cut, that the

3   defendant engaging in communication with an undercover agent

4   posing as the parent of a minor child and having discussions

5   about sexually abusing the minor child, even if it's a

6   fictitious minor child, is sufficient to satisfy the

7   statute.  So to the extent that that is what the motion

8   relates to, I don't think that there would be any merit to

9   it and I think we have to --

10            THE COURT:  Let me see what he's filed.  Or what

11   he wants to file.

12            MR. BRODERSON:  May I approach, Your Honor?

13            THE COURT:  Yes, sir.  Do you have a copy for the

14   government?

15            MR. BRODERSON:  I do not, Your Honor.  I

16   apologize.

17            THE COURT:  Ms. Darly, will you go make a copy of

18   this, please?

19            THE DEPUTY CLERK:  Yes, sir.

20            THE COURT:  I'm sorry to have to ask you to do

21   that.

22        (Pause in the proceedings.)

23            MR. SEARLE:  Your Honor, would you like the

24   government to respond?  Or address the motion?

25            THE COURT:  Yes.  First, what, if any, problem is

```
 1    there in allowing me to address this motion when Mr. Prive
 2    is represented by counsel?
 3            MR. SEARLE:  Your Honor, I'm not quite sure
 4    specifically what the Court is asking there.  I do know that
 5    the rules of the district are that when a defendant is
 6    represented by counsel he can't file pro se motions and so
 7    on that basis, I think since this is a pro se motion and he
 8    is being represented by counsel, there is a basis to deny
 9    the motion or move forward with the sentencing on that
10    ground.
11        In terms of the merits of the actual pleading, I think
12    on its face the Court can address the motion and deny it as
13    meritless.
14        In terms of the constitutionality of the statute, the
15    statute has been around for a while.  I don't have any case
16    law at the top of my head where the Constitutional vagueness
17    of the statute has been interpreted, but I know the statute
18    has been construed by a number of -- in a number of circuit
19    court opinions and there's never been an instance where the
20    Court has found the statute to be unconstitutionally vague.
21        In terms of the use of the Internet as an
22    instrumentality of interstate commerce that has been well
23    established in a number of different cases, specifically as
24    it relates to this particular statute but in other statutes
25    as well, and I believe it's so accepted that the 11th
```

```
1   Circuit pattern jury instructions specifically lists the

2   Internet as an instrumentality of interstate commerce and

3   gives that as a specific example of an instrumentality of

4   interstate commerce.

5       The defendant's motion also seems to focus solely on

6   the persuasion prong of the statute.  However, as the Court

7   is aware, it's not just persuasion, it's -- it would also

8   include to induce, entice or coerce an individual to engage

9   in sexual activity, and specifically the 11th Circuit

10  pattern jury instruction defines induce as to stimulate the

11  occurrence of or cause.  So I think on that basis alone,

12  whatever the defendant's arguments are, certainly the

13  statute -- that particular element of the statute was more

14  than satisfied based on the facts of this case.

15      And then, Your Honor, as far as just the specifics of

16  this particular case, I am aware of case law in the 11th

17  Circuit specifically United States v. Morel which is at 368,

18  a federal circuit third, 1283, which is an 11th Circuit

19  opinion from 2004, and it specifically addresses the issue

20  where there was communication with an adult intermediary by

21  means of interstate commerce, and the Court held that the

22  defendant need not communicate directly with the minor.

23  It's sufficient that the defendant induce or attempt to

24  induce the minor via an adult intermediary.  And I -- I'm

25  also aware of some other cases, I don't have the cites off
```

```
 1    the top of my head, where the communication was solely with
 2    an undercover agent.  So I think that the motion is merely
 3    grasping at straws in an attempt to delay these proceedings
 4    further.  I'd also note that the motion is untimely and that
 5    we're at the point where the defendant needs to be sentenced
 6    and I think just based on the timeliness matter, the motion
 7    should be stricken from the record.
 8              THE COURT:  Mr. Broderson.
 9              MR. BRODERSON:  Yes, sir.
10              THE COURT:  Do you know of any impediment in my
11    waiving the rule to address the motion -- the pro se motion?
12              MR. BRODERSON:  Your Honor, I'm not aware of any
13    such rule.  I know as Mr. Searle indicated, I know that the
14    local rules of this district preclude the filing of pro se
15    motions by represented parties.  However, I don't see any
16    reason why the Court cannot waive that rule for purposes of
17    addressing the motion in this case.
18              THE COURT:  Okay.  That's what I intend to do.
19        Do you wish to argue your motion beyond what you put in
20    writing?
21              THE DEFENDANT:  Your Honor, I only want to point
22    out that while Mr. Searle's arguments are accurate and what
23    he's just said, those are not points that are actually
24    addressed or contended by this motion.  It's not intended to
25    focus on the simple act of persuasion.  The term persuasion
```

```
1    is meant to be all inclusive of the action included in the
2    statute which is to persuade, induce, entice or coerce, and
3    that it's not in any way targeted towards arguing the
4    communication with an adult intermediary as addressed in
5    Morel either.  It's specifically targeted at the
6    jurisdictional element which is required by 12B3B in order
7    to hear this motion.
8              THE COURT:  Mr. Lopez, Morrison, Jones argument,
9    right?
10             THE DEFENDANT:  Yes, Your Honor.
11             THE COURT:  I waive the -- I waive the rule and
12   heard the argument.  I read the motion which is well stated,
13   but without merit, and it's denied.
14         Now, do you have any objections as to the factual
15   accuracy of the report?
16             MR. BRODERSON:  Your Honor, we submitted a letter
17   to the probation officer, and I believe that the factual
18   portions that we initially objected to have been resolved.
19   There are objections to the offender character -- the
20   guideline calculations.
21             THE COURT:  Right.  Now, those have been set forth
22   in the addendum.  Is there any further argument on those
23   objections?
24             MR. BRODERSON:  Your Honor, I would also like to
25   point out that in March I sent an e-mail to Mr. Salce, the
```

1    probation officer, raising objection to paragraph 33 of the

2    PSR, specifically the two level enhancement for use of a

3    computer on the grounds that that would constitute double

4    counting inasmuch as the use of a computer or the Internet

5    is an element of the offense and a basis for the initial

6    offense level of 28.

7         And as it pertains to each of the objections that I've

8    made to 34 and 35, under 1(b)1.3, I do not believe that they

9    fall within the definition of relevant conduct.  While I'm

10   well aware that under Chapter 6 of the guidelines the Court

11   is entitled to consider whether dismissed conduct under a

12   plea agreement constitutes relevant conduct, and if it does,

13   to use that -- utilize that to -- for the guideline score.

14   In this case, the conduct reflected in Count 1 of the

15   indictment, which is being dismissed, did not occur during

16   the commission of the offense of conviction, was not in

17   preparation for the offense of conviction, and did not -- it

18   was not in the course of attempting to avoid detection or

19   responsibility of that offense.  For those reasons, we

20   contend that it is not relevant conduct and cannot be

21   utilized to provide the enhancements set forth in paragraphs

22   34 and 35.

23        In addition, Mr. Prive contends that the conduct

24   related to Count 1 as its contained in the PSI or PSR and

25   utilized to provide a guideline score should be excluded

```
 1    under federal rule of evidence 403 inasmuch as its probative

 2    value is substantially outweighed by its prejudicial point.

 3           THE COURT:  Well, let me make sure I understand.

 4    There's an addition to the points scored for the age of the

 5    child under relevant conduct, and the objection to including

 6    the allegations that form the basis of Count 1 which has

 7    been dismissed as relevant conduct.  There's also an

 8    objection as to the use of the computer because I didn't

 9    know that.

10           MR. BRODERSON:  Correct, Your Honor.  That was

11    raised after Mr. Salce issued the addendum, and I sent him

12    an e-mail and indicated that we object to paragraph 33 of

13    the PSR because we contend that the two level enhancement

14    for use of a computer constitutes double counting because

15    the use of a computer or the Internet is an element of the

16    offense and also provides a basis for a level of -- initial

17    offense level 28.

18           THE COURT:  Well, I want to make sure I understand

19    that argument since I haven't had time to study it as I have

20    the other arguments.

21       Wouldn't that be true with any case involving child

22    pornography that's communicated or transferred using

23    computers?

24           MR. BRODERSON:  I suppose the argument would apply

25    equally.
```

```
 1              THE COURT:  The statute -- what you're saying is

 2     that it's an element of the statute as well as a guideline

 3     enhancement.

 4              MR. BRODERSON:  Correct.  And that the use of a

 5     computer or the Internet is a requirement for a conviction

 6     under this particular statute, 2422(b), Title 18, and that

 7     the guidelines provide an initial offense level for that is

 8     28.  So therefore, then adding additional two levels for use

 9     of a computer is, in essence, double counting.

10              THE COURT:  Well, it's not the same as the child

11     pornography case because I don't think that statute includes

12     an element of using mail or any facility or means of

13     interstate commerce.

14              MR. BRODERSON:  Yeah, possession of child

15     pornography would not require the use of the Internet or

16     cell phone as the element -- as the second element of this

17     particular offense requires.

18              THE COURT:  Mr. Searle, have you had a chance to

19     consider that objection?

20              MR. SEARLE:  No, Your Honor.  This is the first

21     time I'm hearing of it.  Obviously, the government concurs

22     with the calculations that the Department of Probation made

23     with regard to all of these enhancements in terms of the

24     relevant conduct.

25              THE COURT:  How can it be an enhancement if it's a
```

```
1    required element of the offense?

2         MR. SEARLE:  Well, I would argue, Your Honor, that

3    it isn't a required element of the offense.  It merely

4    states using mail or any facility or means of interstate or

5    foreign commerce.  It just so happens to be in this

6    particular case that that was the actual instrumentality of

7    interstate commerce that the defendant elected to use, but

8    it doesn't specifically say in the statute that he must use

9    a computer or the Internet.  He elected to do so in this

10   case, and I think based upon that, it's not an element of

11   the statute and it's not double counting.  It's merely the

12   means that he used to commit the offense and therefore, an

13   enhancement would apply.

14       I can certainly look into finding a specific case on

15   point that it would address this issue, however, I would

16   note that the defense has provided no such case to indicate

17   otherwise, and so I think the enhancement should apply.

18       In terms of relevant conduct argument, it's the

19   government's view that this is relevant conduct.  We're

20   talking about the same victim, the defendant believed that

21   he was communicating with the father of that child

22   throughout all of the offense conduct.

23         THE COURT:  That's another argument.  I'll come

24   back to that one.

25         MR. SEARLE:  Okay.
```

```
 1              THE COURT:  I'll take them one at a time.  Do you
 2    have any authority on this issue?
 3              MR. BRODERSON:  Your Honor, I do not.
 4              THE COURT:  Okay.  I think the government is
 5    correct in its analysis.  I think that although it does
 6    contemplate interstate means of sending information, it
 7    doesn't restrict those means to a computer.  In other words,
 8    if it went by mail, regular mail, it would -- the
 9    enhancement would not apply.  So that objection is
10    overruled.
11        Does the government wish to respond to the argument
12    pertaining to sexual act or sexual conduct as a -- an eight
13    level enhancement?
14              MR. SEARLE:  Yes, Your Honor.
15        As I indicated, it's our view that all of this is
16    relevant conduct.  It was the same minor victim involved.
17    The defendant believed that he was communicating with that
18    minor victim's father throughout the offense conduct.
19              THE COURT:  No, I'm talking about the -- as I
20    understand it, correct me if -- let me know if you don't
21    agree with this, with my analysis, but what I think the
22    objection is, there are two remaining objections.  The first
23    one has to do with the Court considering the defendant's
24    rape of the child which formed the basis of Count 1 and
25    scoring Count 2.  One happened in September.  The first
```

```
 1    Count 1, the conduct giving rise to Count 1 arose in
 2    September, and the enticement happened some time thereafter.
 3         I don't know what you would advocate as being the
 4    beginning.  I suppose you could advocate it started
 5    immediately following the conduct when they discussed how
 6    much -- when the defendant Mr. Glasscock talked about how
 7    much they enjoyed the event.  But they are separate
 8    arguments, and I want you to treat them separately.
 9         I was asking about that, whether the -- for you to
10    respond just to the sex act or sex -- sexual conduct that
11    took place and was the basis in September and was the basis
12    for Count 1 being counted as relevant conduct.
13              MR. SEARLE:  As Mr. Broderson indicated, and I
14    believe the guidelines state this clearly, the Court can
15    consider conduct that relates to a count that's being
16    dismissed as relevant conduct and that's what the government
17    is asking the Court to do.
18              THE COURT:  Do me a favor.  Take the first one
19    out, you're not looking at them as separate, I don't think.
20    I want you first to address the fact that the child was
21    under 12.  That enhancement.
22              MR. SEARLE:  Okay.
23              THE COURT:  That's not dependent on what happened
24    to Count 1, is it?
25              MR. SEARLE:  No, Your Honor, because it was the
```

```
 1   same child he was inducing in the count that he pled guilty

 2   to.

 3             THE COURT:  Right.  Do you have any response to

 4   that, Mr. Broderson?

 5             MR. BRODERSON:  No, Your Honor.

 6             THE COURT:  The objection is overruled.

 7        Now, let's deal with the conduct in Count 1, which I

 8   think is a more difficult issue.

 9             MR. SEARLE:  As I indicated, it's our view that

10   even though --

11             THE COURT:  Was it done in preparation?

12             MR. SEARLE:  I believe so, Your Honor.  I don't

13   think that the second offense would have ever existed had it

14   not been for the sexual abuse of the child preceding that.

15   I mean, that was the whole basis for law enforcement even

16   initiating any communication with the defendant was the fact

17   that they saw these e-mails where the two individuals were

18   discussing sexually abusing the child and I don't see how

19   they can be viewed as separate in this particular case.

20        In addition, Your Honor, again, and this is consistent

21   with the -- with the Court's view of the age of the child

22   enhancement, the offense that was charged in the second --

23   in the count that the defendant ultimately pled guilty to,

24   it did involve -- well, I guess the enhancement specifically

25   states in the commission of a sexual act, so I'll withdraw
```

```
 1    that particular argument, but...

 2            THE COURT:  Here's what 1(b)1.3 says regarding

 3    relevant conduct:  "All acts and omissions committed, aided,

 4    abetted, counseled, commanded, induced, procured or

 5    willfully caused by the defendant that occurred during the

 6    commission of the offense," so you're not arguing that.

 7            MR. SEARLE:  No, Your Honor.

 8            THE COURT:  In preparation for the offense, you

 9    are going to argue that, so I'll pass on that.  In the

10    course of attempting to avoid detection or responsibility

11    for that offense, you're not arguing that.  So what you're

12    arguing is you're arguing that it happened in preparation.

13    Go ahead and tell me about that.

14            MR. SEARLE:  Again, Your Honor, I understand that

15    the word "preparation" indicates I guess the plan leading up

16    to the actual offense.  And I would argue that in this case

17    these two individuals had communication over the Internet,

18    discussed sexual fantasies as it related to sexually abusing

19    minor children and eventually consummated that, for lack of

20    a better word, when they sexually abused this child at

21    Mr. Glasscock's home and but for that sexual abuse,

22    everything that took place thereafter would not have

23    happened.  If the defendant had not actually sexually --

24            THE COURT:  If they hadn't met it would have never

25    happened, that's for sure.  If they hadn't met, it wouldn't
```

1    have happened.

2            MR. SEARLE:  So in that sense, I can't see how it

3    can't be viewed as preparation for the actual offense the

4    defendant was convicted of.

5            THE COURT:  Do you want to respond, Mr. Broderson?

6            MR. BRODERSON:  Your Honor, I can only say that

7    the guideline provision is clear that it states in the prong

8    that the government is relying on in preparation for that

9    offense, I have a hard time understanding how a sex act,

10   which is what we're talking about here, an enhancement for a

11   sex act, is somehow in preparation for a conduct involving

12   enticement which occurs some weeks or months later.  And I

13   think that's what -- in order for you to find that this sex

14   act is relevant conduct, I think you have to find that the

15   sex act is somehow in preparation for acts involving

16   enticement that occurred down the road and I simply -- I

17   would simply say that I do not think it fits.

18           THE COURT:  What does the last -- Mr. Searle, what

19   does the last phrase of the provision -- the guideline

20   provision mean?  It says, "Or the object of those acts or

21   omissions."  I don't think that's relevant to what we're

22   talking about, is it?

23           MR. SEARLE:  I'm sorry, Your Honor.  If you could

24   repeat that again.  I apologize.

25           THE COURT:  It says, "As well as all harm

```
 1   resulting or the objects of those acts or omissions -- acts

 2   or omissions."

 3             MR. SEARLE:  I guess my view of that would be that

 4   it would include this conduct because we're speaking of the

 5   same minor victim that this defendant -- that was the object

 6   of the defendant's offense.

 7       I would also argue that this was a course of conduct

 8   that the defendant was engaged in with respect to this

 9   particular victim.  The communications continued and were

10   regular throughout and leading up to the actual

11   communications that led to his conviction for this

12   particular offense and they all related to the sexual abuse

13   of the child.

14             THE COURT:  Well, I do think that the conduct

15   obviously is related, but I can't square it with the plain

16   reading of the statute, and I sustain the defendant's

17   objection and I'll include that in a written order.

18       Now, there was one other objection that I heard you

19   ease into, Mr. Broderson, and that was a 403 argument

20   regarding the conduct being considered for purposes of

21   defendant's history and character?  Is that what I heard?

22             MR. BRODERSON:  There was additional grounds for

23   the argument that the conduct contemplated in Count 1 of the

24   indictment, which the defendant committed, being considered

25   as it relates to his sentencing on Count 2, the argument is
```

1    that that conduct because it relates to a dismissed count,

2    one and two, because its probative value substantially

3    outweighed by its prejudicial effect, should not be

4    considered by the Court.  But I think the Court just ruled

5    that, so there wouldn't be any additional -- there wouldn't

6    be any need to raise that argument again.

7             THE COURT:  Well, but I am going to consider it

8    and -- under 3553.

9             MR. BRODERSON:  I understand that and I would -- I

10   think you're free to.  I think you're free to.

11            THE COURT:  I'm not sure how far you intended your

12   motion to go, but to the extent it is addressed in 3553,

13   your motion is overruled.

14        As to calculating the guideline score, it's sustained.

15            MR. BRODERSON:  Thank you, Your Honor.

16            THE COURT:  Okay.

17            MR. SEARLE:  Your Honor, I do have one issue that

18   I'd like to take up with regard to the calculations.

19            THE COURT:  Yes, sir.

20            MR. SEARLE:  And this is something that I was just

21   made aware of this morning, there's a recent opinion in the

22   11th Circuit in the United States vs. Casselberry.  It is an

23   opinion that came down in February 27, 2015, it's -- the

24   cite is 594 federal appendix 612, and in it the Court found

25   that the -- that a five level enhancement for engaging in

1    pattern of activity involving prohibited sexual conduct

2    applied under guideline Section 4(b)1.5 subsection (b)(1),

3    and the conduct at issue included two Internet chats the

4    defendant had with minors in the lead up to the offense that

5    amounted to a pattern the 11th Circuit found under that

6    guideline section despite the defendant's claims that the

7    chats occurred contemporaneously with the conviction or that

8    the chats were contemporaneous with one another or that he'd

9    never been charged or convicted with a crime for those

10   chats.

11         Based upon that, Your Honor, if the 11th Circuit has

12   said that that enhancement would apply for mere chats, my

13   argument would be that this five level enhancement should

14   apply here when we're talking about the defendant engaging

15   in sexual abuse of the child.  We would argue that that

16   would be a -- engaging in a pattern of activity involving

17   prohibited sexual conduct.

18         THE COURT:  Are you familiar with the case,

19   Mr. Broderson?

20         MR. BRODERSON:  I am not, Your Honor.

21         THE COURT:  Do you have a copy for counsel?

22         MR. SEARLE:  Your Honor, I only have one copy.

23   I'll provide that to counsel.

24         THE COURT:  What's the citation?

25         MR. BRODERSON:  Your Honor, it's 594 federal

```
1    appendix 612.
2              THE COURT:  So it's an unpublished opinion?
3              MR. BRODERSON:  That's correct, Your Honor.
4              THE COURT:  We're going to take a recess.  It will
5    be at least 15 minutes.  I need to read the case.
6              MR. BRODERSON:  Okay.  Thank you, Your Honor.
7                      (Recess)
8              THE COURT:  Mr. Salce, have you had an opportunity
9    to look at this guideline and the case that was provided by
10   Mr. Searle?  Please be seated.
11             THE PROBATION OFFICER:  I did review the
12   guideline, Your Honor.  I hadn't necessarily looked at the
13   case.  I'm just -- I was just handed that now.  To me it
14   does not look like it would apply.  I don't see that there
15   were two instances of prohibited sexual conduct that
16   occurred.
17             THE COURT:  Well, is that because you're not
18   including the instant offense that is prohibited sexual
19   conduct?
20             THE PROBATION OFFICER:  From my perspective, Your
21   Honor, I think it appears that in September of 2013, Prive
22   participated in prohibited sexual conduct with the minor
23   victim, and I think on the date of his arrest, in November,
24   he was traveling back to the residence with the intention of
25   participating in prohibited sexual conduct.  But it did not
```

```
 1    take place.  So I don't think that that meets the standard

 2    from my perspective.  I think the guideline states that he

 3    had to engage in prohibited sexual conduct, which I don't

 4    think he did on two separate occasions.

 5              MR. SEARLE:  That's not what the 11th Circuit

 6    found in this case, Your Honor.  They merely said that these

 7    chats constituted sexual conduct, and I think they even

 8    addressed the issue of where the defendant argued that one

 9    of the prior instances was the actual offense that he was

10    convicted of and it said -- the 11th Circuit said even if

11    the factual predicate of this argument were true, it would

12    not make a difference if the offense of conviction qualifies

13    as prohibited sexual conduct, the pattern of activity.

14              THE COURT:  The real question, if you look at

15    subsection -- the commentary 4A, it says that prohibited

16    sexual conduct means any of the following, and it includes

17    those offenses described in 2426(b)(1)(a) and -- or B, and

18    that provision includes enticement.

19              MR. SEARLE:  That's correct, Your Honor.

20              THE COURT:  I think Mr. Salce is making a

21    distinction between the enticement and attempted enticement.

22    Is that right, Mr. Salce?

23              THE PROBATION OFFICER:  Yes, Your Honor.

24              MR. SEARLE:  But, Your Honor, my response to that

25    would be the attempt language is within the same section.
```

```
 1    It's within -- it's one of the offenses described within 18

 2    U.S.C., Section 2426 sub (b)(1)(a) -- sub (b)(1) big A.  In

 3    that the actual attempt language is within 2422.  In other

 4    words, the statute doesn't seem to distinguish between

 5    attempt and the completed offense.

 6         Beyond that, Your Honor, as we've discussed, the

 7    offense that was dismissed was a completed enticement which

 8    would be separate and apart from the actual sexual abuse of

 9    the child.  So notwithstanding the probation department's

10    view here, you have a completed enticement which relates to

11    the conduct that is being dismissed, but as Section 4(b)1.5

12    states, it doesn't matter whether the defendant was

13    convicted or not.  So you have a completed enticement

14    instance and then you have the actual sexual abuse of the

15    child.  So those are two prior instances right there.  And

16    that doesn't count the actual attempted enticement that the

17    defendant was convicted of.

18         THE COURT:  So you would say that the molestation

19    of the child and the enticement would constitute a pattern

20    even without the attempted enticement which is the case

21    we're here on?

22         MR. SEARLE:  That's correct, Your Honor.  And with

23    regard to the factual assertion that support that, it's

24    specifically the facts that are set forth in the PSR, not

25    referencing anything that isn't in the record.  But I think
```

```
1   if you look at the PSR, all of that is set forth in the
2   factual history of the case.
3                THE COURT:  Mr. Broderson, do you wish to be
4   heard?
5                MR. BRODERSON:  Your Honor, initially I would have
6   to say that because this enhancement was not included as
7   part of the PSR in the case, I'm relatively unprepared to
8   address the issue.  However, having looked at the subsection
9   and hearing what Mr. Salce said, I would concur with his
10  analysis that while the act of sexual abuse against the
11  child may be an instance that can be considered, the attempt
12  -- attempted enticement which was with an undercover police
13  officer, unlike the two chats with minors in the Casselberry
14  case which were both with the minors, should not be
15  considered a pattern of sexual activity or pattern of sexual
16  conduct that provides the basis for this enhancement.
17               THE COURT:  Well, now you raise a 2255 issue.  I
18  want you to be prepared to respond to it.  I want to give
19  you an opportunity to respond to it.  I know this case is in
20  herky-jerky for a number of reasons.  It is not --
21  scheduling has not gone smoothly.  Mr. Spadafora is here
22  again from Brevard County and I appreciate that, but I think
23  we owe it to the parties and to the reviewing Court to try
24  to get it correct.  So I'm going to give you an opportunity
25  to be heard.  I didn't know about it.  I will tell you that
```

```
 1    without prejudging it, I'll give you an opportunity to be

 2    heard, but it seems to me that when you refer back to the

 3    2422 that includes attempt.  But I don't know that there's

 4    much case law on this, so I haven't had a chance to check

 5    that.

 6              MR. BRODERSON:  Well, Your Honor, I would argue

 7    against its application in this particular case.

 8              THE COURT:  I know you would.  But I'll give you

 9    an opportunity to do that properly.  If you want.

10              MR. BRODERSON:  All right, Your Honor.

11              THE COURT:  Is that what you're asking?

12              MR. BRODERSON:  I think that would probably be the

13    best way to proceed.

14              THE COURT:  I'll give Mr. Salce a chance to look

15    at it, too.  I don't know that he had any notice of the --

16              MR. SEARLE:  I apologize for the short notice on

17    this, Your Honor.  I actually just received the case when I

18    got to court this morning, so.

19              THE COURT:  Well, we've had short notice on issues

20    for both sides.  This one is a little more difficult than

21    the last one.

22         Just so everybody here understands, I think

23    Mr. Spadafora spends enough time here that he does

24    understand, the Court -- the trial Court and the federal

25    system when handling criminal cases is required to
```

1   accurately calculate a guideline score.  And that is

2   sometimes not an easy task.  We have the expertise of

3   Mr. Salce and other members of his office who help us

4   interpret not just this compilation of provisions, some

5   cross referencing one another as we just did with relevant

6   conduct and now we're doing it with whether this is a

7   pattern where you can't just use the book, you have got to

8   refer back and forth to statutes.  And then in addition to

9   that, as you've also seen today, we have case law that

10  interprets the guidelines.  So it's very complicated, but

11  all of us take it seriously because we're required to do so.

12       In the end, the score that's calculated using the

13  guidelines is not necessarily the prescriptive of the

14  sentence that's imposed by the Court because other things

15  also are considered.  But that does not in any way relieve

16  us of our obligation to accurately calculate the score.  I

17  don't know what happens with those compilations anymore once

18  we've done them, but they go somewhere, and it's an evolving

19  body of law.

20       And I've not had this issue come up.  Apparently,

21  because Mr. Searle gave me an unpublished opinion, the 11th

22  Circuit hasn't written much about it either, perhaps some of

23  the other circuits or maybe some district courts have and

24  we'll find that out, and I prefer to get it right given --

25  especially given the other complications in this case of

```
 1   sorting out guidelines and other procedural problems that
 2   we've had.
 3              MR. BRODERSON:  If it helps the Court in
 4   scheduling the matter, I assume that I can look at this
 5   issue this week and be prepared first part of next week.
 6              THE COURT:  Okay.  I'll try to do it soon.  Okay.
 7   Court is in recess.  Thank you.
 8         Mr. Broderson, file a written response.
 9              MR. BRODERSON:  I will, Your Honor.
10        (sentencing hearing concluded at 11:51 a.m.)
11                    C E R T I F I C A T E
12              I certify that the foregoing is a correct
13   transcript from the record of proceedings in the
14   above-entitled matter.
15
16   s\Sandra K. Tremel                    June 19, 2015
17
18
19
20
21
22
23
24
25
```