IN THE UNITED STATES DISTRICT COURT,

MIDDLE DISTRICT OF FLORIDA,

ORLANDO DIVISION


Case No. 6:17-cv-01498-JA-DCI


JONATHAN TYLER PRIVE,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.


PETITIONER'S AMENDED MOTION TO VACATE, SET
ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. §2255

# TABLE OF CONTENTS

- TABLE OF CONTENTS ——————————— (B)
- MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. §2255 form ——————— 2-13
- ANSWER TO QUESTION 11(b)(5) (continued) ——————— A-1
- SUPPORTING FACTS FOR GROUND ONE (continued) ——— A-2, A-3
- SUPPORTING FACTS FOR GROUND THREE (continued) ——— A-4
- SUPPORTING FACTS FOR GROUND FOUR (continued) ——— A-4, A-5
- GROUND FIVE ——————————— A-5 to A-7
- GROUND SIX ——————————— A-7 to A-9
- GROUND SEVEN ——————————— A-9 to A-10
- GROUND EIGHT ——————————— A-10 to A-13
- GROUND NINE ——————————— A-13
- GROUND TEN ——————————— A-14 to A-15
- CERTIFICATE OF SERVICE ——————————— C

AO 243 (Rev. 09/17)

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT

SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District _Middle District of Florida_ |
|---|---|
| Name *(under which you were convicted):*   JONATHAN TYLER PRIVE | Docket or Case No.:   6:17-cv-01498-JA-DCI   (6:14-cr-00033-JA-KRS-1) |
| Place of Confinement:   Brevard County Jail Complex | Prisoner No.:   60386-018   Brevard Inmate #   337745 |
| UNITED STATES OF AMERICA | Movant *(include name under which convicted)* |

v.

JONATHAN TYLER PRIVE

### MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:
United States District Court, Middle District of Florida, Orlando Division
401 W. Central Blvd.
Orlando, FL 32801

   (b) Criminal docket or case number (if you know): _6:14-cr-00033-JA-KRS-1_

2. (a) Date of the judgment of conviction (if you know): _08/29/2014_

   (b) Date of sentencing: _04/22/2015_

3. Length of sentence: _365 months imprisonment, to be followed by lifetime probation._

4. Nature of crime (all counts):

One (1) Count of Attempted Enticement of a Minor, in violation of 18 U.S.C. 2422(b).

5. (a) What was your plea? (Check one)
   (1) Not guilty ☐     (2) Guilty ☒     (3) Nolo contendere (no contest) ☐

6. (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

6. If you went to trial, what kind of trial did you have? (Check one)     Jury ☐     Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?     Yes ☒     No ☐

AO 243 (Rev. 09/17)

8. Did you appeal from the judgment of conviction?   Yes ☒   No ☐

9. If you did appeal, answer the following:

(a) Name of court: _The United States Court of Appeals for the Eleventh Circuit._

(b) Docket or case number (if you know): _15-12032_

(c) Result: _Conviction Per Curiam Affirmed_

(d) Date of result (if you know): _05/24/2016_

(e) Citation to the case (if you know): _____

(f) Grounds raised: _None, Counsel Filed an Anders brief and withdrew from the case without raising any grounds._

(g) Did you file a petition for certiorari in the United States Supreme Court?   Yes ☐   No ☒

If "Yes," answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

(5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

Yes ☒   No ☐

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: _U.S. District Court, Middle District of Florida_

(2) Docket or case number (if you know): _6:14-00033-JA-KRS-1_

(3) Date of filing (if you know): _Filed in open court April 15, 2015_

AO 243 (Rev. 09/17)

(4) Nature of the proceeding: Pro se motion to vacate conviction under Fed. R. Crim. P. 12(b)(3)(B)

(5) Grounds raised: That there was a jurisdictional defect in the original indictment and charging document because 18 U.S.C. 2422(b) is unconstitutional and void, thereby denying the court jurisdiction under 18 U.S.C. 3231 to impose conviction and sentence.

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?
Yes ☐   No ☒

(7) Result: District Court judge ruled the motion was meritless and denied it in court.

(8) Date of result (if you know): 04/15/2015

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: United States Court of Appeals for the Eleventh Circuit

(2) Docket of case number (if you know): 15-12032

(3) Date of filing (if you know): 06/24/2016

(4) Nature of the proceeding: Petition for Rehearing En Banc

(5) Grounds raised: 1) The jurisdictional hook of 18 U.S.C. 2422(b) is unconstitutionally vague; 2) 18 U.S.C. 2422(b) is beyond the regulatory authority of Congress under the Commerce Clause and unconstitutional; 3) The statute violates the clear-intent rule of legislation and abrogates the prosecutorial discretion of the state of Florida; 4) The decision by the Court of appeals that none of the Defendant's grounds for appeal in his Response to the Anders Brief were meritorious reasons for appeal was in conflict with binding caselaw from the 11th Circuit and Supreme Court on issues of vagueness inquiries, statutory interpretation, and Commerce Clause powers of Congress; ... (Continued on attached page   )

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?
Yes ☐   No ☒

(7) Result: Petition denied, conviction per curiam affirmed

(8) Date of result (if you know): 08/10/2016

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:   Yes ☒   No ☐

(2) Second petition:   Yes ☐   No ☒

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:
The petition for rehearing en banc was already in the appellate court, and due to the per curiam denial, and the lack of findings by the court regarding the grounds for relief the Defendant raised in his response to the Anders Brief filed by counsel, there were no issues the Defendant believed to be appealable to the U.S. Supreme Court. The Defendant lacked any of the required legal expertise to be aware of his right to petition for Certiorari until the filing deadline had passed.

AO 243 (Rev. 09/17)

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** 18 U.S.C. §2422(b) is facially unconstitutional under the First Amendment because it is overly broad as written, sweeping within its scope a substantial amount of protected speech.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(1) 18 U.S.C. 2422(b) fails to draw any distinction between persuasion, inducement, enticement, or coercion of a minor into imminent illegal activity and mere advocacy of illegal sexual activity, which is constitutionally protected speech, allowing for prosecutions based on both activities, and criminalizing protected speech. (2) The portion of the statute's jurisdictional hook "any... means of interstate or foreign commerce" is so vague that it sweeps within its scope any and all forms of communication, even passing notes written with pen and paper, or use of the human voice, which is the most common "means" of interstate or foreign commerce on earth. The only way to be sure to avoid prosecution is to refrain from the speech entirely, which chills free speech. (3) As currently written, 2422(b)'s phrase "any sexual activity for which any person can be charged with a criminal offense" is so broad that it encompasses any sexual activity for which a criminal offense exists, regardless of where it is. This 'any person' clause was written to allow prosecutions using the laws of one state against residents of another, but due to the fact that laws like Oregon Revised Statute 163.415 make any sexual contact with a minor a crime, and with the unqualified term "for which any person can be charged with a criminal offense," even the existance of a... (continued on attached page   ).

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why: This was not raised on appeal because the movant was told by appointed counsel that only those things which appeared in the record from the district court could be raised on appeal, and anything else had to wait to be raised in a 2255 motion.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☒   No ☐

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: Motion under 28 U.S.C. 2255

Name and location of the court where the motion or petition was filed:

U.S. District Court, Middle District of Florida, Orlando Division

Docket or case number (if you know): 6:17-cv-1498-Orl-28KRS

Date of the court's decision: 9/27/2017

Result (attach a copy of the court's opinion or order, if available): Motion was stricken for violating the Local Rule limiting motions to only 25 pages, and could not thereafter be filed again due to the unlawful restrictions imposed by the court. Prive's case was then dismissed for failing to re-file in accordance with the unlawful restrictions.

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☒

AO 243 (Rev. 09/17)

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes ☒        No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐        No ☒

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

U.S. Court of Appeals for the Eleventh Circuit, Atlanta, Georgia

Docket or case number (if you know):   18-11693-EE

Date of the court's decision:   04/08/2019

Result (attach a copy of the court's opinion or order, if available):
Dismissal reversed and case remanded for further proceedings.

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

issue:   The issue on appeal was the wrongful striking of the motion and the courts unlawful restrictions on any amended pleading, the original 2255 motion was not decided on the merits, and the issues therein were not the subject of the appeal.

**GROUND TWO:** The phrase "any sexual activity for which any person can be charged with a criminal offense" is overbroad, and unconstitutionally vague, violating the 1st and 5th Amendment.

(a)   Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
(1) Because there is nothing in the text of 2422(b) which limits the reach of the phrase "any sexual activity for which any person can be charged with a criminal offense" to a discreet set of actors, and as the word 'any' is expansive, the substantive act referred to is any sexual activity for which any person, not only one who is involved in the incident at hand, can be charged with a criminal offense. This means that any time a criminal offense exists somewhere for the contemplated activity, the clause is satisfied by virtue of the fact that the sexual activity is one for which a person may be charged. This allows every state to export its laws to the others, criminalizing locally protected speech in many, and requires people to guess at what applies and what does not, violating Due Process under the Fifth Amendment. (2) The plain text of 2422(b) is not readily susceptible to a narrower interpretation which would limit its reach, but even if it were, the layman's reading of the text would still result in the conclusion above, and chill free speech as people self censored in order to avoid potential prosecution or arrest under the statute.

(b)   **Direct Appeal of Ground Two:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐        No ☒

AO 243 (Rev. 09/17)

    (2)   If you did not raise this issue in your direct appeal, explain why: *This was not raised on appeal because the Movant was told by appointed counsel that anything not preserved on the record from the district court could not be raised on direct appeal, but must wait to be raised in a 2255 motion*

**(c)   Post-Conviction Proceedings:**

    (1)   Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☒        No ☐

    (2)   If you answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:  *Motion under 28 U.S.C. 2255*

    Name and location of the court where the motion or petition was filed:

    *U.S. District Court, Middle District of Florida, Orlando Division*

    Docket or case number (if you know):  *6:17-cv-1498-Orl-28KRS*

    Date of the court's decision:  *9/27/2017*

    Result (attach a copy of the court's opinion or order, if available): *Motion was stricken for violating the Local Rule limiting motions to only 25 pages, thereafter prevented from refiling due to unlawful restrictions imposed by the court. Prive's case was then dismissed for failing to re-file in accordance with the unlawful restrictions.*

    (3)   Did you receive a hearing on your motion, petition, or application?

        Yes ☐        No ☒

    (4)   Did you appeal from the denial of your motion, petition, or application?

        Yes ☒        No ☐

    (5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐        No ☒

    (6)   If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    *U.S. Court of Appeals for the Eleventh Circuit, Atlanta, Georgia*

    Docket or case number (if you know):  *18-11693-EE*

    Date of the court's decision:  *04/08/2019*

    Result (attach a copy of the court's opinion or order, if available):

    *Dismissal reversed and case remanded for further proceedings.*

    (7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

    issue: *The issue on appeal was the wrongful striking of the motion and the court's unlawful restrictions on any amended pleading. The original 2255 motion was not decided on the merits, and the issues therein were not the subject of the appeal.*

AO 243 (Rev. 09/17)

**GROUND THREE:** The jurisdictional element of 18 U.S.C. 2422(b) "using... any facility or means of interstate or foreign commerce" is unconstitutionally vague, violating Due Process.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(1) 2422(b) uses as its 'jurisdictional hook' the phrase "Whoever, using... any facility or means of interstate or foreign commerce," but the terms "any facility" or "any... means" are expansive class words, not specific or well defined articles. (2) Words in statutory text are understood to have their ordinary, everyday meanings, and are construed in light of their common use and understanding. (3) The common understanding of the term "facility" is that it refers to a physical location or installation, and no speaker of ordinary intelligence, being untrained in issues of law, would ever use the word 'facility' to mean 'equipment for doing something'. The statute thus does not give a person of ordinary intelligence fair notice of what it encompasses, at best being ambiguous and leaving people to guess at its meaning, and it violates Due Process. (4) 'Means' is a class word which is understood to be anything which can be used to accomplish a desired goal, and the term "any... means of interstate or foreign commerce" can only be read to mean "anything which can be used to accomplish interstate or foreign commerce." The expansive term 'any means' encompasses literally anything one can imagine which was or could be used to accomplish commerce, including pens and paper, written words, the human voice, or literally any form of communication. (5) Because the average... (continued on attached page )

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☒

(2) If you did not raise this issue in your direct appeal, explain why: The movant was told by appointed counsel that any issues not preserved on the record from district court could not be raised on direct appeal, but must wait to be raised in a 2255 motion.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☒    No ☐

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:   Motion under 28 U.S.C. 2255

Name and location of the court where the motion or petition was filed:

U.S. District Court, Middle District of Florida, Orlando Division.

Docket or case number (if you know):   6:17-cv-1498-Orl-28KRS

Date of the court's decision:   9/27/2017

Result (attach a copy of the court's opinion or order, if available): Motion was stricken for violating a Local Rule limiting motions to only 25 pages, and an amended filing could not be made thereafter due to the unlawful restrictions on amended pleadings imposed by the court. Prive's case was then dismissed for failing to re-file in accordance with the unlawful restrictions.

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☒    No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☒

AO 243 (Rev. 09/17)

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

U.S. Court of Appeals for the Eleventh Circuit, Atlanta, Georgia

Docket or case number (if you know):  18-11693-EE

Date of the court's decision:  04/08/2019

Result (attach a copy of the court's opinion or order, if available):
Dismissal reversed and case remanded for further proceedings.

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

issue:  The issue on appeal was the wrongful striking of the motion and the court's unlawful restrictions on any amended pleadings. The original 2255 motion was not decided on the merits, and the issues therein were not the subject of the appeal.

**GROUND FOUR:**  As written, 18 U.S.C. 2422(b) exceeds Congress's Commerce Clause authority and violates the Tenth Amendment to the U.S. Constitution, and Prive's conviction was unconstitutional.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(1) As written, 2422(b) attempts to operate under Congress's Commerce Clause authority by using the jurisdictional element "Whoever, using... any facility or means of interstate or foreign commerce" in order to persuade, induce, entice, or coerce a minor into engaging in any sexual activity for which any person can be charged with a criminal offense. (2) Congress may only regulate commerce within three narrow categories pursuant to the Commerce Power: (i) The instrumentalities of interstate commerce; (ii) The channels of interstate commerce; and (iii) Activities which substantially effect commerce. (3) Nowhere in the text of 2422(b) does the statute attempt to regulate instrumentalities or channels of interstate commerce. Instead, the statute attempts to regulate the facilities or means which can accomplish commerce, and this is beyond Congress's Commerce Clause powers post Lopez. (4) 2422(b) was written to encompass more than just the internet, phones, pagers, etc., and therefore it is not actually an example of Congress regulating the internet. The internet is merely one article which satisfies the jurisdictional element of the statute. (5) Because the plain text makes no... (continued on page ___)

(b)  **Direct Appeal of Ground Four:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?
Yes ☐      No ☒

(2)   If you did not raise this issue in your direct appeal, explain why:  Movant was told by appointed counsel that anything not preserved on the record from district court could not be raised on direct appeal, but must wait to be raised in a 2255 motion.

(c)  **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?
Yes ☒      No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

AO 243 (Rev. 09/17)

Type of motion or petition:  *Motion under 28 U.S.C. 2255*

Name and location of the court where the motion or petition was filed:

*U.S. District Court, Middle District of Florida, Orlando Division.*

Docket or case number (if you know):  *6:17-cv-1489-Orl-28KRS*

Date of the court's decision:  *9/27/2017*

Result (attach a copy of the court's opinion or order, if available):  *Motion was stricken for violation of a Local Rule limiting motions to only 25 pages, and an amended filing could not be made due to the unlawful restrictions on amended pleadings imposed by the court. Prive's case was then dismissed for failing to re-file in accordance with the unlawful restrictions.*

(3)  Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☒

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes ☒    No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☒

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

*U.S. Court of Appeals, For the Eleventh Circuit, Atlanta, Georgia*

Docket or case number (if you know):  *18-11693-EE*

Date of the court's decision:  *04/08/2019*

Result (attach a copy of the court's opinion or order, if available):
*Dismissal reversed and case remanded for further proceedings.*

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:  *The issue on appeal was the wrongful striking of the motion and the court's unlawful restrictions on amended pleadings. The original 2255 motion was not decided on the merits, and the issues contained therein were not the subject of the appeal.*

13.  Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:  *Prive previously filed a §2255 motion in this court raising all these grounds except for the Brady and Giglio issues raised in Ground Six of this motion, but that first §2255 filing was stricken from the record for violating M.D.Fla. Local Rule 3.01(a) and Prive is not sure if that motion is applicable to this question. Prive did not raise the issues in Ground Six due to his lack of access to the evidence until after his previous filing, which denied him knowledge of the facts giving rise to the new claim.*

AO 243 (Rev. 09/17)

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?    Yes ☒    No ☐

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. Prive has filed a motion for discovery in the 11th Circuit, Middle District of Florida, Orlando Division, in case no. 6:17-cv-01498-JA-DCI, which is a 28 U.S.C. 2255 proceeding, which raises issues of Brady and Giglio violations by the United State's Attorney's Office and the Brevard County Sheriff's Office. Prive also has a motion for reconsideration filed in the same action, which asserts that the court's order denying his motion to vacate its prior order for a violation of Local Rule 4.14 was plain error and an abuse of discretion. Prive is also filing a motion for leave to exceed page-limits under Local Rule 3.01(d) contemporaneously herewith because this motion exceeds 25 pages and the court does not seem inclined to allow his filing under Local Rule 4.14(a).

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At the preliminary hearing:

Jose Rodriguez

(b) At the arraignment and plea:

Jose Rodriguez

(c) At the trial:

Not Applicable

(d) At sentencing:

Daniel Newton Brodersen, 1328 East Concorde Street, Orlando, FL 32803

(e) On appeal:

Daniel Newton Brodersen, 1328 East Concorde Street, Orlando, FL 32803

(f) In any post-conviction proceeding:

Not Applicable Daniel Newton Brodersen, 1328 East Concorde Street, Orlando, FL 32803

(g) On appeal from any ruling against you in a post-conviction proceeding:

Not Applicable

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?    Yes ☐    No ☒

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes ☐    No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?    Yes ☐    No ☐

AO 243 (Rev. 09/17)

18.   TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain
why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

Prive commenced this action with the timely filing of a motion under 28 U.S.C. §2255 less than a year after his conviction became final. His initial motion was stricken for violating M.D. Fla. Local Rule 3.01(a)'s 25-page restriction on motion length, thereafter imposing filing restrictions on any Amended Motion to Vacate under 28 U.S.C. §2255 which were in conflict with the text of Local Rule 4.14(a) and the Rules Governing Section 2255 Proceedings for the United States District Courts, as well as the instructions on the model form appended thereto. The district court judge dismissed Prive's case when Prive could not refile his motion in accordance with the terms of the court's order, as it forced him to give up the vast majority of his available grounds for relief and the facts supporting them. The 11th Circuit Court of Appeals reversed the dismissal, finding it unwarranted under the circumstances, remanding the case for further proceedings. Prive now attempts to file this Amended Motion to Vacate, Set Aside, or Correct Sentence as a continuation of the original, timely-commenced action, or in the alternative, under 28 U.S.C. §2255(f)(2), being less than 1 year after the impediment to filing created by the actions of the district court in violation of Prive's right to Due Process under the 5th Amendment to the U.S. Constitution, was removed, as well as 28 U.S.C. §2255(f)(4), because Prive has been denied access to evidence and testimony which was not available to him until after July 2, 2018.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255,
paragraph 6, provides in part that:
  A one-year period of limitation shall apply to a motion under this section.  The limitation period shall run
  from the latest of –
      (1)   the date on which the judgment of conviction became final;
      (2)   the date on which the impediment to making a motion created by governmental action in violation of
      the Constitution or laws of the United States is removed, if the movant was prevented from making such a
      motion by such governmental action;
      (3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has
      been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral
      review; or
      (4)   the date on which the facts supporting the claim or claims presented could have been discovered
      through the exercise of due diligence.

AO 243 (Rev. 09/17)

Therefore, movant asks that the Court grant the following relief: *That the conviction and sentence imposed be vacated, the movant be ordered released from custody immediately, and that the U.S. Attorney's Office be barred from bringing any further prosecutions against the movant for conduct arising from this case, due to Double Jeopardy.*

or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on *June*         , *2019*         .
                                                                                    (month, date, year)

Executed (signed) on *June*         , *2019*                      (date)

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

## ANSWER TO QUESTION 11(b)(5)  (CONTINUED)

5) 18 U.S.C. 2422(b) impermissibly alters the balance of State and Federal powers; 6) The statute is unconstitutional, and the District Court lacked jurisdiction under 18 U.S.C. 3231; 7) The Defendant's motion to vacate pursuant to Rule 12(b)(3)(B) should have been granted as a matter of law; 8) The Defendant plead guilty to conduct that did not constitute a federal crime because of the unconstitutional statute; 9) The District Court judge abused his discretion in denying the 12(b)(3)(B) motion as "meritless"; 10) Exculpatory evidence tending to prove the innocence of the Defendant was intentionally withheld from the Defendant, denying him Due Process under the 5th Amendment; 11) The District Court judge abused his discretion by not allowing the Defendant's attorney to question his former counsel fully, denying him the ability to perform a proper Buckles inquiry; 12) The District Court judge never conducted an inquiry into whether an asserted Brady violation had, in fact, occurred; 13) The Defendant's plea was not knowingly and voluntarily entered, due to intentional misleading by his prior counsel, and he never verbally or contractually waived his right to appeal his conviction; 14) Allowing the conviction to stand results in a manifest injustice; 15) The Defendant received ineffective assistance of counsel from both of his attorneys in the District Court.

## SUPPORTING FACTS FOR GROUND ONE
### (CONTINUED)

... non-actor who resides in Oregon (because they could be charged for any sexual activity) satisfies the clause "any sexual activity for which any person can be charged with a criminal offense" (emphasis added) in every case, criminalizing even otherwise-lawful speech accross the country.   (4) The phrase "any sexual activity for which any person can be charged with a criminal offense" is so overly broad that it leaves people to guess at what it covers, providing no guidance as to what laws take precedence between two conflicting states; whether a person violates the statute if they persuade, induce, entice, or coerce a minor into what is locally permissible but illegal in one of two jurisdictions; or if it encompasses any sexual activity for which a criminal statute exists, somewhere. To be absolutely sure of safety from prosecution, a person must refrain from any persuasion, inducement, enticement, or coercion of a minor into any sexual activity, thus chilling free speech.   (5) Because the statute leaves people to guess at what laws take precedence when two jurisdictions have conflicting laws, and as the contemplated activity being unlawful in only one jurisdiction may make locally permissible conduct unlawful, a person must refrain from any persuasion, inducement, enticement, or coercion of a minor into sexual activity, and the statute chills free speech.   (6) As long as the means are peaceable peaceable, 'coercion' is still constitutionally protected speech, and peer-pressure, social ostracism, or public embarrassment, while 'coercive', are still protected speech criminalized by 2422(b), even when not aimed at producing 'imminent lawlessness'.   (7) Because the 11th Circuit holds that knowledge of the minor's age is not a required element of the crime, and as even congress has admitted that there exists effectively no way to be certain of someone's age on the internet, people have no choice but to refrain from persuading, inducing, enticing, or coercing any person into sexual activity over the internet, due to the risk of prosecution for accidentally or unknowingly violating 2422(b). This chills free speech.   (8) Because the statute does not criminalize talking to minors about illegal sexual activity, only persuasion, inducement, enticement, or coercion into engaging in those activities, the decision about whether speech has crossed that line is left up to the subjective judgment of enforcement authorities, leaving speakers to wonder what another person might

A-2

consider overly suggestive and imposing a requirement that speakers self-censor in order to avoid potential prosecution, chilling free speech. (9) The jurisdictional element of 2422(b) "any facility or means of interstate or foreign commerce" is so vague and standardless that it fails to establish minimum guidelines to prevent law enforcement, prosecutors, and juries from persuing their personal predilections. (10) The clause "any sexual activity for which any person can be charged with a criminal offense" is so vague and standardless that it fails to establish minimum guidelines to prevent law enforcement, prosecutors, and juries from persuing their personal predilections. (11) Florida allows sexual activity between minors 16 and 17, and partners up to 23 years old, yet FL ST 796.07(2)(h) makes it a crime to participate in an act of 'lewdness', with a person over 18 years of age or older. This statute is not enforced in cases of sexual activity with minors 16 or 17 and partners up to 23, in accordance with what is commonly known as the 'romeo and juliet' law, but §2422(b) disregards state policy and criminalizes attempting to persuade, induce, entice, or coerce minors 16 or 17 into what is otherwise lawful activity. (12) §2422(b) is not restricted to adults who prey on minors, but applies with equal force to all activities between minors as well. (13) Regardless of its historic use by prosecutors up until now, §2422(b) is not narrowly written to achieve the legitimate goal of preventing predators from stalking minors on the Internet. (14) Despite many states having local policies of non-enforcement of laws like FL ST 796.07(2), or 800.02, which makes it a criminal offense to commit any "unnatural and lacivious act with another person," §2422(b) allows the federal government to displace the public policies of the states and criminalize otherwise per-missible conduct based on the existance of obscure, vague, or unenforced laws on a state's record books. (15) §§ §2422(b) allows for discrimination against gay teens due to the existance in nearly every state of 'sodomy' or 'unnatural act' laws like FL ST 800.02, even where sex between or with minors is otherwise lawful. (16) Because §2422(b) is itself vague, but also relies on the existance of often vague and undefined laws such as FL ST 796.07(2) (prohibiting 'lewdness' or 'assignation') or so-called 'indecent' activities (FL ST 796.07(1)(b)), even where the federal statute may be clear, it can rely on unconstitutionally vague state laws to function in a great number of cases, and it fails to establish minimum guidelines to prevent law enforcement, prosecutors, judges, and juries from persuing their person-al predilections. (17) Because of the ease of access to adult web groups and websites, §2422(b) allows for a 'heckler's veto', letting the presence of minors interfere with protected adult speech.

## SUPPORTING FACTS FOR GROUND THREE
### (CONTINUED)

... American knows that the federal government may not constitutionally regulate absolutely everything simply because it was or has the potential to be used to accomplish interstate or foreign commerce, people of ordinary intelligence are left to guess at what the law may legitimately encompass, and will necessarily differ in their subjective interpretations of what the term 'means' includes. The statute's jurisdictional element is therefore unconstitutionally vague, violating Due Process. (6) The presence of the jurisdictional element "any facility or means of interstate or foreign commerce" does not help to limit the scope of the statute to a discreet set of offenses which the federal government may constitutionally regulate, but instead expands its reach to encompass virtually all instances of persuasion, inducement, enticement, or coercion of a minor into unlawful sexual activity, failing to establish minimum guidelines for law enforcement and prosecutors, or juries.

## SUPPORTING FACTS FOR GROUND FOUR
### (CONTINUED)

...mention of either the instrumentalities or channels of interstate commerce, requiring only the use of something which qualifies as a 'facility' or 'means' of interstate or foreign commerce, 2422(b) cannot be judicially rewritten or reinterpreted to say "instrumentalities' or 'channels' of interstate commerce, in order to save it from unconstitutionality or correct the perceived errors of the legislative branch in drafting the law. (6) The fact that Congress has the power to regulate the internet, that the internet and phones happen to be instrumentalities or channels of commerce, and that these just so happen to fall under the much broader category of things which constitute "any facility or means of interstate or foreign commerce", does not automatically make Congress's regulation of that much broader category constitutionally permissible. (7) Because 2422(b) functions without the presence of an instrumentality or channel of interstate commerce, and without the mail or any facility or means of interstate or foreign commerce, it is obvious that the statute is intended to regulate the activity of persuading, inducing, enticing, or coercing a minor into unlawful sexual

A-4

activity, not the articles used. (8) Because the statute regulates non-economic, intrastate activity, making no mention of *interstate* activity at all, the activity *standing alone* must have a substantial effect on interstate commerce before Congress may regulate it, but using a facility or means of interstate commerce to persuade, induce, entice, or coerce a minor into "any sexual activity for which any person can be charged with a criminal offense," standing alone, can have no such effect without resorting to the type of 'costs of crime' analysis rejected by the Supreme Court.
(9) Because Congress lacks the Commerce Clause authority to regulate the use of a facility or means of interstate commerce to persuade, induce, entice or coerce a minor into "any sexual activity for which any person can be charged with a criminal offense" under the three *Lopez* categories, and as the activity itself is beyond Congress's power to regulate absent some other constitutionally granted power, Prive's conviction for "using... any facility or means of interstate or foreign commerce" to knowingly attempt to persuade, induce, entice, or coerce a minor into unlawful sexual activity is unconstitutional, in violation of the Tenth Amendment.

## GROUND FIVE

Ground Five: Exculpatory evidence tending to prove Prive's innocence was withheld from the Defense during the District Court proceedings, violating Prive's right to Due Process.

(a) Supporting facts: (1) During the discovery process in district court, the U.S. Attorney's Office turned over CD-ROM disks to the defense, which contained copies of electronic and email files obtained by the Brevard County Sheriff's Office pursuant to a search warrant executed on America Online (AOL). The discs contained hundreds of files from the email addresses "mercenaryninja69@netscape.net" and "theblackjackal01@netscape.net" which were heavily encrypted and unreadable. Only a handful of emails from the 'mercenaryninja69' account were made available to the defense.

(2) Some of the emails accessible in the discovery were dated September 9th and 10th, 2013, and appeared to be communication between 'mercenaryninja69' (asserted by prosecutors to be Prive) and the father of a minor victim, Michael Glascock. The U.S. Attorney's Office (USAO) used these messages as the basis for Count One of the original two-count indictment against Prive, to wit, that he knowingly did persuade, induce, entice, or coerce a minor into illegal sexual

activity, in violation of 18 U.S.C. 2422(b).   (3) Prive believed that some of the messages which were encrypted and inaccessible to him contained messages from September 9th and 10th, 2013, which would show beyond a doubt that the father of the minor victim had stated he was home alone, with no children in the home, and had no intention of engaging in any illegal activity, and Prive told his appointed counsel to get the full results of the AOL warrant from the USAO, but the USAO denied having any additional email messages and never disclosed any of the encrypted data.   (4) The USAO claims to have turned over all the emails from the AOL warrant, with only select redactions made to protect the identities of minors, but Prive personally read every available electronic file in the discovery and found no redactions, and hundreds of files remained encrypted.   (5) The first time Prive saw the Plea Agreement prepared by the USAO, he immediately noticed that the Factual Basis portion contained part of the very conversation from September 9th and 10th, 2013, the USAO had previously denied having, and which was not included in the discovery. Prive demanded his attorney confront the USAO with this and get the rest of the AOL data which was being withheld, but the USAO again refused to turn over the encrypted files and denied having any further email data.   (6) Because Prive could not procure the evidence necessary to prove his innocence to Count One of the indictment, he was eventually induced to plead guilty to Count Two (attempted) in exchange for the USAO agreeing to drop Count One. Had this exculpatory evidence been made available to Prive, he would never have pled guilty, but would have moved to dismiss Count One and proceeded to trial on Count Two.   (7) In 2012, after Prive had been transferred to State custody to await trial on other charges stemming from the same criminal episode, Prive's appointed counsel, Rebecca Morgan, discovered that the Brevard County Sheriff's Office was in possession of hundreds of emails from the AOL search warrant results, which had not been turned over during the discovery process. Upon asking why they were being withheld, the BCSO told Ms. Morgan they were not being released because they contained child pornography. Ms. Morgan proceeded to examine the files in person at the Brevard County State Attorney's Office and found these claims to be false, reporting to Prive that there was no child pornography, but that the State

A-6

was still refusing to turn over the files. (8) Among the files withheld by the BCSO and the State, Ms. Morgan reported seeing emails from September 9th and 10th, 2013, which contained the very conversations Prive's federal attorney, Daniel Brodersen, testified he'd been unable to locate, and which the USAO denied having withheld. (9) The missing emails detail conversations from September 9th and 10th, 2013, which conclusively document that Prive could not have had the requisite knowledge or intent required for a conviction, and would have demonstrated factual innocence to count one of the indictment, and the lack of this evidence prevented him from having any way to substantiate the claim, ultimately inducing him to enter a plea he otherwise would never have considered.

## GROUND SIX

Ground Six: The prosecution in Prive's district court proceedings knowingly utilized perjured statements and fabricated evidence, denying Prive due process.

(a) Supporting Facts: (1) The majority of the evidence against Prive consisted of email conversations between Michael Glascock (the father of the minor), using the account 'mikesmobilemassages@gmail.com,' and 'mercenaryninja69@netscape.net' (An America Online account), believed to be Prive. (2) Agent Michael Spadafora, working with the BREVARD COUNTY SHERIFF'S OFFICE (BCSO) obtained a search warrant for Google account information and records related to Glascock and the 'mikesmobilemassages' account on October 25, 2013, which directed BCSO personnel and Department of Homeland Security (DHS) agents to search for specified data "under the control of 1600 Amphitheatre Parkway, Mountain View, California, 94043," for evidence of specific Florida crimes, and for him to "make a return of your doings under this warrant within ten (10) days of the date hereof." (3) Under both Florida statute (FL ST 933.05) and California law (California Penal Code, Part 2, Title 12, Ch. 3, §1534) which is applicable to this case, all search warrants not executed after ten (10) days are thereafter considered void, and Florida statute (FL ST 933.08) requires that the officers named in the search warrant's direction must actually be present and participate in the execution of that search warrant. Failure to abide by FL ST 933.08 results in an unlawful execution, under Florida law. (5) On October 30, 2013, Agent Spadafora filed a sworn return on that search warrant which indicated that he had abided by these laws and executed it in a timely manner. The return was also notarized,

A-7

stating that he had executed the search warrant and seized Google account information related to Glascock and 'mikesmobilemassages' on the 23rd of October, three days after the warrant was issued. (6) This return by Spadafora was a complete fabrication meant to deceive the court and avoid the laws of search warrant execution. Spadafora never took part in any search, never seized evidence, and neither the search or the seizure happened on that date. Spadafora sent a copy of the search warrant to Google and left it to them to execute, and according to Google's Certificate of Authenticity, the search and seizure was done on the date of November 21, 2013, nearly a month later. (7) The prosecution is charged with knowledge of this deception because it was clear from not only the obvious discrepancy in dates, but also because Agent Spadafora filed another report on January 14, 2014, stating that he received the results of the search warrant from Google "on or about December 04, 2013," (report no. 13320571, Jan. 14, 2014), which was also sworn to, in plain conflict with the return. (8) On November 13, 2013, a similar warrant was issued, using the same language, for America Online (AOL) data related to "Jonathan Tyler Prive" and "mercenaryninja69@netscape.net," to Agent Spadafora. Again Spadafora filed a return stating he had executed the search and seized the data sought within ten days of the warrant's issuance, and again it was a deliberate act of perjury, as his case report from December 20, 2013, stated: "On or about December 03, 2013, AOL responded and provided me with the results of the search warrant for the account of "mercenaryninja69"." The statement in this report was also sworn to, contradicting the return. (9) The electronic data from both these accounts was obtained pursuant to Florida state search warrants, and all of the prosecution's evidence was illegally obtained under both Florida and California law, but due to the fabricated search warrant returns, this was concealed. (10) Because Spadafora's illegal execution of the warrants and willful acts of perjury materially effected the case under *Giglio v. United States*, 405 U.S. 150, due process concerns require a new trial, if not outright reversal. (11) As part of the discovery disclosed to the defense, the United States Attorney's Office (USAO) delivered a copy of Agent Spadafora's case report no. 13332224, dated November 19, 2013, which stated that on the day of his arrest, Prive had been subjected to a 'traffic stop'. There is no mention in any report by Agent Spadafora that he personally took

any part in the decision to stop Prive, or that he had ordered Prive's arrest. (12) No reports contradicting Spadafora's narrative were disclosed to the defense, and Spadafora's arrest affidavit listed the time of arrest as over an hour after Prive's stop, misleading the defense into the understanding that the stop on November 5, 2013, was a lawful investigative or Terry stop. (13) On April 16, 2018, Spadafora testified in state court that he did not order Prive stopped, and was not the one who made that decision, but on July 2, 2018, BCSO deputies Cpl. Christopher Sauro and Lt. Robert Vitaliano testified, separately, that they had not only ~~stopped~~ Prive on November 5, 2013, but had actually subjected him to an immediate ~~arrest~~, and that their only reason for doing so was that Spadafora called them and told them they had probable cause, and to arrest him. (14) The contradictory nature of the two versions of events, if disclosed to the defense in district court, would have almost certainly resulted in the arrest on November 5th being held unlawful, thus invalidating all the subsequent fruits of the stop and the search warrants obtained in reliance on the evidence and statements obtained by the BCSO. The failure to disclose these facts violated Prive's right to Due Process under the Giglio and Brady standards, as did the use of the perjured statement from Spadafora.

## GROUND SEVEN

Ground Seven: Prive did not receive fair and unbiased treatment from the district court judge, denying him due process under the Fifth Amendment.

(a) Supporting Facts: (1) Prive submitted a timely motion to terminate the proceedings and vacate his conviction under Fed. R. Crim. P. 12(b)(3)(B), alleging that the statute creating the offense was unconstitutional, thus failing to invoke the court's jurisdiction with the failure to state an offense in the indictment, and the Judge dismissed it as meritless without stating any findings of fact or conclusions of law. (2) A primary allegation in Prive's motion was that it was unconstitutionally vague because it (18 U.S.C. 2422(b)) did not give fair notice of what it encompassed under the jurisdictional element "using... any facility or means of interstate or foreign commerce" due to the vast and nebulous class of things that fall under those terms, and that because of the lack of reference to 'instrumentalities' or 'channels' of interstate commerce the statute was beyond Congress's Commerce Clause power, and was not a regulation of the internet, due to the language of the jurisdictional element 'facility or means'. (3) Moments after he

denied Prive's motion as being 'meritless', i.e. without any arguable basis in fact or law, the district court judge overruled an objection by the defense to a sentencing enhancement sought by the government for use of a computer in the commission of the offense. In doing so the judge voiced his approval of the government's reasoning that the statute did not require use of the internet or computer, and later clarified the court's opinion that the statute's "interstate component could be much broader than the use of a computer. It could be the mail or interstate road transportation, or any variety of ways other than a computer." This was the very argument the court held meritless when raised by the Defendant. (4) Because the record is silent on the reasons for the judge's denial of the 12(b)(3)(B) motion as meritless, it must be assumed that the court's opinion was that none of the Defendant's arguments had legal merit, including that the statute did not identify those things which are a 'facility or means' of interstate commerce, and an opposite ruling in favor of the government moments later is clearly biased, denying Prive due process. (5) During an evidentiary hearing on his motion to withdraw plea, Prive's counsel was not allowed to question his previous attorney about his performance while appointed to represent Prive; whether judicial resources would be preserved by allowing Prive to withdraw his plea; or speak on whether the government would be prejudiced by a withdrawal of the plea, denying Prive the benefit of being heard on the central questions of a proper *Buckles* inquiry into a motion to withdraw plea. (6) The district court Judge told the courtroom at sentencing that the sentence would have been the same even if all of Prive's objections to the proposed guideline score had been sustained, because of his personal view of the facts, and sentenced him to a combined sentence of life, far beyond the guidelines score, even though it violated the plea agreement's restriction on his right to appeal a mistake in his sentence. The judge's statement constitutes an admission that he had prejudged the case, denying prive a fair hearing, as his mind was made up to impose a harsh sentence.

## GROUND EIGHT

Ground Eight: Prive was provided with ineffective assistance of counsel by Jose Rodriguez, denying him the Sixth Amendment right to adequate counsel.

(a) Supporting Facts: (1) Rodriguez refused to file any additional demands or motions for discovery to try and locate what Prive told him was exculpatory evidence, in the form of email records which Rodriguez was told by the United States Attorney's Office (USAO) did not exist, even after a portion of those records appeared in the

USAO's draft of Prive's plea agreement. (2) Rodriguez lied to Prive during his representation to him of the legal options in his case, including his representation to Prive that Prive could not raise any issues of violations of Florida laws because the law enforcement personnel involved were part of a State/Federal taskforce, and as such had immunity from the laws of the state. This lie was later discovered by Prive and resulted in his reporting it to Magistrate Judge Karla Spaulding, who then approved his request for new counsel. (3) Even after Prive discovered a portion of the missing email evidence in the plea agreement drafted by the USAO, Rodriguez lied and told him it couldn't be used as evidence in court or to force the disclosure of the other data because the draft of the plea agreement was not part of the discovery, and that under federal rules only things in the discovery could be used in court. (4) Rodriguez was absent for some months dealing with a health crisis with his family, followed by a vacation, during which time he admits he did essentially no work on any cases, after which he went to court on August 15, 2014, without ever consulting Prive or meeting with him, and informed the court that the case would resolve by guilty plea, arranging for a change of plea hearing on August 27, 2014. He never informed Prive he had done this, and came to see Prive for the first time with the discovery on August 23, 2014, at which time he told Prive "This is my first time seeing a lot of this too." (5) Rodriguez fell asleep during this session, allowing Prive to view the discovery without any imput or advice, having told him to "take down notes of things that jump out at you" and that they would discuss them later. (6) Rodriguez performed no investigation into the discovery materials, having already procured a drafted plea agreement from the USAO and set the change of plea hearing, but only pretended to be evaluating the case until he could convince Prive of the futility of his defense and induce him to plea out. He never informed Prive that he had done the August 15th appearance, at any time, keeping it a secret from Prive to hide his intent. (7) Even the most basic investigation into the discovery documents would have shown that the search warrants in this case were illegally executed and supported by contradictory and fabricated documents easily apparent to anyone trained in law, but Rodriguez barely looked at any of the discovery due to his interest in seeing Prive sign the plea agreement before the change of plea hearing he'd scheduled, and repeatedly told Prive there was nothing we could do to challenge the evidence. (8) Because of his failure to investigate or give Prive honest legal advice, Prive did not know that

Agent Spadafora of the Brevard County Sheriff's Office (BCSO) had fabricated multiple search warrant returns in order to hide the illegal execution of those warrants, which resulted in Prive not being able to understand his legal options or challenge the admission of the illegally obtained electronic communications data used against him in this case. (9) The search warrant for Prive's home which he saw in the discovery was obviously facially invalid, consisting of only one paragraph of text in the center of an otherwise blank page, directing the search for broad categories of items, and with an anonymous signature hastily scribbled underneath it, but Rodriguez never said a word about it before dozing off in his chair, and never told Prive it was illegally executed because evidence was seized under a state search warrant, for the prosecution of state crimes, by DHS officers not named in its direction, which violated the 10th Amendment and Florida law 901.1505. (10) Rodriguez lied to Prive and told him that Michael Glascock would identify him as the suspect in the crime charged, if the case went to court, but Glascock had in fact never been able to identify Prive, and never completed any kind of lineup or photo identification. (11) Rodriguez lied to Prive and told him he would retain his right to appeal after signing the plea agreement because it contained no comprehensive relinquishment of the right to appeal the conviction. (12) Rodriguez perjured himself during his testimony on January 22, 2015, in order to try and cover up his court appearance and procurement of a plea agreement before ever coming to see Prive. He first testified that Prive wanted to plea and had agreed to plea out after viewing the discovery and discussing the law with Prive, and that at that point he went to the USAO to request a plea deal. When challenged on cross examination about whether he had in fact already procured a plea agreement before Prive ever asked about a plea, Rodriguez reversed himself and stated he might have obtained it first, and he would "have to look, because of the fact that [Prive] was not certain he wanted to plea up until that point in time." (13) Rodriguez told Prive that he'd never tried any cases of this type before, and wasn't sure "what all the laws are" in such cases. (14) Rodriguez lied and told Prive he could not challenge the use of DHS agents as surveillance assets in a State-run sting operation, with the intent to make an arrest only for state crimes, even though Florida law 901.1505 and the Tenth Amendment both work to prohibit federal enforcement of state crimes, and this was a valid defense which would have

allowed the defense to challenge the legality of the stop and arrest, as well as the DHS surveillance, which forms the lynchpin of the entire case. (15) Rodriguez lied to Prive and told him that he would not receive a fair trial in Florida, and that both the judge and the prosecutor "had it out for him." Prive was told that if he went to trial and lost, the judge would give him life in prison, and that his only "chance of walking the street again [was] to plead guilty now and come back to fight it in the appeals court, where you'll have an unbiased judge." He never told Prive that this would be impossible, and never even told Prive what the court of appeals was, leaving him to believe it was a court somewhere else he could go have a jury trial. (16) Rodriguez never denied having told Prive that he could not challenge anything done by federal/state taskforce members on the basis of their immunity from the laws of Florida, despite having opportunity to do so in court.

## GROUND NINE

Ground Nine: The plea was not knowingly and voluntarily entered because of the intentional misrepresentations of counsel Jose Rodriguez, denying Prive of due process and effective counsel.

(a) Supporting Facts: (1) Because of Rodriguez's intentional misrepresentations to Prive that he had no available defense, and no hope of a fair trial, in the Middle District of Florida, Prive believed that he truly had no option except to plead guilty in order to remove his case to a higher court where he believed he would receive a trial. (2) Because Rodriguez told Prive any discrepancy between the magistrate judge's plea colloquy and the plea agreement would be resolved in favor of the plea agreement, Prive did not object to anything in the colloquy and unknowingly was stripped of his right to an appeal, despite his stated desire to Rodriguez to continue fighting in a different court. (3) Rodriguez told Prive that nothing in the plea agreement or in a federal proceeding could be used against him in any state court or other proceeding, but this was a lie, as admissions and convictions in this case can be used in Florida criminal cases to establish similar fact evidence, as well as in civil commitment proceedings and civil tort actions. Prive would never have entered a plea of guilty to the facts in this case had Rodriguez informed him of this consequence. (4) Rodriguez never explained to Prive that even if Count One were dropped, pursuant to the plea agreement, that the acts in the factual basis could still be used to enhance his sentence as to Count Two of the indictment, which they were.

## GROUND TEN

Ground Ten: Prive was provided with ineffective assistance of counsel by Daniel Brodersen, violating his right to adequate representation under the Sixth Amendment.

(a) Supporting Facts: (1) Even after Prive told him that the USAO was withholding exculpatory evidence in the form of email records, and even after Prive showed him the portion of the plea agreement drafted by the USAO, Brodersen never made any additional motions for discovery or tried to compel the production of the records, but instead only relied on the word of the USAO (who had already shown they *did* have more) and the incomplete discovery package given to him by Jose Rodriguez. (2) Brodersen knew that the missing evidence, if found and put on record, would constitute proof that Rodriguez had rendered ineffective assistance of counsel prior to inducing Prive to plead guilty, which would have helped with the withdrawal of plea and become grounds for appeal and §2255 relief, but he did not dilligently persue the evidence, and the fact that the Brevard County Sheriff's Office (BCSO) and the Florida State Attorney's Office ("the State") were withholding hundreds of email files in bad faith, went unreported in district court. (3) Knowing that there was evidence that the USAO was withholding information not in the discovery, and without trying to compel its production in any way, Brodersen did not press the issue when questioned by the court at the evidentiary hearing on January 22, 2015. Instead, Brodersen simply said he'd been unable to find any additional Brady material, and that the Brady issue with regard to the portion of the missing evidence in the plea agreement was moot now. Knowing it was likely there was more, he simply hadn't pressed for, Brodersen then lied when asked if he believed there was a Brady issue before the court at that time, saying "I do not believe it is at this point." (4) Beginning on February 5, 2015, the same afternoon as the motion to withdraw plea was denied, Brodersen made multiple attempts to withdraw as counsel because he did not want to file a motion under Fed.R.Crim.P. 12(b)(3)(B) challenging the constitutionality of 18 U.S.C. 2422(b), and its overly broad jurisdictional element "any facility or means of interstate or foreign commerce," Brodersen told Prive such an argument was foreclosed by circuit precedent, but there has never been a vagueness challenge to the jurisdictional element, or a contention that 'facility or means' do not equal 'instrumentalities or channels' of interstate commerce, presented in this court or the 11th Circuit. (5) Brodersen repeatedly vacilated between agreeing to work with Prive and trying to withdraw, resulting in

A-14

a finding by Judge Spaulding that "it is evident that Defendant... is taking steps to delay being sentenced in this case," which was subsequently used by the government to argue against a downward adjustment and by the district judge, John Antoon, II, in his sentencing consideration, due to a belief that this was caused by Prive. (6) Brodersen agreed, at last, to write Prive a motion under 12(b)(3)(B), which he promised to either file prior to sentencing or bring to sentencing for Prive to try and submit on his own, but this was a lie. Brodersen wrote nothing, and had it not been for Prive mistrusting him and writing his own motion, on the day he came for sentencing he would have had nothing at all to put on the record. Having to rely on his own inartfully pleaded motion deprived Prive of the assistance necessary to properly frame his argument with the necessary elements of the motion, and such assistance would have allowed him to present his argument in a less fragmented way, avoiding its out of hand denial. (7) Brodersen agreed to represent Prive on appeal with the understanding that he would only be allowed to do so if he argued the constitutional issue in the pro se 12(b)(3)(B) motion was not meritless and that Jose Rodriguez provided Prive with ineffective assistance. He also agreed to raise the issue of Judge Antoon's ruling during the evidentiary hearing on the motion to withdraw plea that prevented the defense from addressing three of the four factors necessary to a proper Buckles inquiry, and a plain error or abuse of discretion issue on Antoon's denial of the 12(b)(3)(B) motion due to the disparity in rulings on the same legal argument. Brodersen did none of these things, filing an Anders brief and withdrawing from the case, instead. (8) Brodersen intentionally and maliciously ignored all attempts to contact him after April 15, 2015, even refusing to acknowledge voicemails, emails, and orders from the 11th Circuit on Prive's motions for extensions, which attempted to get him to send Prive records of the case necessary for responding to the Anders brief. Had Prive not eventually managed to reach Brodersen's former paralegal and beg for assistance, and had that young man not gone out of his way to help, Prive would have had nothing but the Appellant's Corrected Appendix on Appeal with which to form a response to the Anders brief. (9) Brodersen never consulted with Prive prior to filing his Anders brief, changed his address without notifying Prive, and despite orders from the Court of Appeals on September 2, and November 16, 2015, never provided Prive any assistance of any kind, and his presence on Prive's case kept Prive from being allowed access to a law library at the Brevard County Detention Center, due to his not being formally pro se, robbing Prive of any legal assistance at all.

A-15

## CERTIFICATE OF SERVICE

I, Jonathan Prive, do hereby certify that a true and correct copy of the foregoing has been placed in the Brevard County Detention Center's mailing system, to be sent by U.S. Mail, on this, the 27th day of June, 2019, to the following parties:

(1) The Clerk of the Court
    U.S. District Court
    Middle District of Florida
    401 W. Central Blvd.
    Suite 1200
    Orlando, FL 32801-0120

(2) The U.S. Attorney's Office
    400 W. Washington Street
    Suite 3100
    Orlando, FL 32801

Signed: _____     Date: 6/27/2019
        Jonathan T. Prive

C